# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

)
ANDREW R. PERRONG,                                    )
on behalf of himself and                              )
all other similarly situated,                         )
                                                      )
      Plaintiff,                               )
                                                      )
      v.                                       )     Case No. 1:18-cv-000712-GMS
                                                      )
LIBERTY POWER CORP, L.L.C.,                            )     CLASS ACTION
                                                      )
      Defendant.                               )
                                                      )
_____)

## BRIEF-OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND PARTIAL MOTION TO DISMISS PLAINTIFF'S <u>COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     FACTS .............................................................................................................. 1

III.    ARGUMENT ...................................................................................................... 3

  A.    Defendant's Motion to Dismiss under FED. R. CIV. P. 12(B)(6) Should be Granted Because the Relevant Portion of the TCPA Is Unconstitutional ........................................ 3

     1.   Laws that Regulate the Content of Speech are Presumptively Unconstitutional ............. 4

     2.   The Content-Based Prohibitions Addressed in *Reed* Do not Depend Upon the Purpose for the Law ..................................................................................................... 5

     3.   Laws that Only Ban Certain Speakers or Only Ban Certain Ideas Do not Make a Content-Based Law Constitutional ................................................................. 5

     4.   The TCPA Is a Content-Based Statute ................................................................. 6

     5.   The TCPA Does Not Survive the Required Strict Scrutiny Examination ........................ 8

     6.   Other Court Decisions that Have Considered the TCPA Have Failed to Fully Consider the Discriminatory Treatment of Protected Speech ........................................................ 11

  B.    In the Alternative, Defendant's Motion to Dismiss under FED. R. CIV. P. 12(B)(1) Should be Granted Because the Plaintiff Does not Have Standing for Injunctive Relief ............. 12

     1.   Legal Standard for Permanent Injunctive Relief ............................................................ 12

     2.   Legal Standard for Mootness ........................................................................................ 15

     3.   Plaintiff Received One, Misdialed Telephone Call and There is No Likelihood of Future Harm. ....................................................................................................... 17

IV.    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Am. Ass'n of Political Consultants v. Sessions*, No. 5:16-CV-252-D, 2018 WL 1474075, at \*1 (E.D.N.C. Mar. 26, 2018) ............................................................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................................ 3

*Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) .......................................... 12

*Bank v. Caribbean Cruise Line, Inc.*, No. 12-CV-584, 2014 WL 1883586, at \*2 (E.D.N.Y. May 12, 2014) ........................................................................................................................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................................................ 3

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 699 (3d Cir. 1996) ...................... 16, 17

*Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790–91 (2011) ....................................... 3

*Brown v. Philadelphia Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) ............................ 16

*Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ................................................... 7, 10

*California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314 (1893) .................................. 15

*Carey v. Brown*, 447 U.S. 455, 461 (1980) .......................................................................... 3

*Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) .................... 15

*Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) ....................................... 5

*Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1219 (11th Cir. 2009) ................................................................................................................................ 9

*Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010) .................... 6, 8, 11

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) ....................... 5, 6

*City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ..................................................... 12

*Cody v. Cox*, 509 F.3d 606, 609 (D.C. Cir. 2007) ............................................................. 16

*Commodity Futures Trading Comm. v. British American Commodity Options Corp.*, 560 F.2d 135, 142 (2d Cir. 1977) ....................................................................................................... 13

*Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) ........ 13

*Conover v. Montemuro*, 477 F.2d 1073, 1085 (3d Cir. 1972) ........................................... 13

*Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980) ...... 6

*Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 325–26, 130 P.3d 1280, 1285 (2006) ........ 14

*Ford v. Reynolds*, 167 Fed. App'x. 248, 249 (2d Cir. 2006) ............................................. 16

*Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 160 (3d Cir. 2016) .................................................................................................... 4, 7, 8, 11

*Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) ....................................................................................................................... 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ........ 13

*Frisby v. Schultz*, 487 U.S. 474, 487 (1988) ...................................................................... 9

*Goode v. Warden Curran Fromhold Corr. Facility*, 669 F. App'x 622, 623 (3d Cir. 2016) ....... 16

*Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) ...................... 12

*Gresham v. Rutledge*, 198 F. Supp. 3d 965, 972 (E.D. Ark. 2016) ..................................... 7

*Hamilton v. Voxeo Corp.*, No. CIV.A. 3:07-CV-404, 2009 WL 1868541, at \*3 (S.D. Ohio June 25, 2009) ........................................................................................................................... 14

*Hudson v. Robinson*, 678 F.2d 462, 465 (3d Cir. 1982) .................................................... 17

*Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1108 (3d Cir. 1985) ......... 17

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ...................... 12

*Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ......... 14

*Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) .................................................................... 13

*Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) .......................................... 15, 16

*McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) ................................ 13, 17

*Mills v. Green*, 159 U.S. 651, 653 (1895) ........................................................................ 15

*Murphy v. Hunt*, 455 U.S. 478, 482 (1982) ...................................................................... 17

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 364 (3d Cir. 2015) .......................... 16

*New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985) ............. 15

*North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ........................................................... 15

*O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ........................................................... 17

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832, 119 S. Ct. 2295, 2308 (1999) ................. 16

*Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430 (1976) ................................ 16

*Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) ............................................... 4

*Powell v. McCormack*, 395 U.S. 486, 496 (1969) ............................................................. 15

*R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992) .................................................................... 4

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2232 (2015) .................................. passim

*Richardson v. Bledsoe*, 829 F.3d 273, 278 (3d Cir. 2016) ................................................ 13

*SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975) .......................... 14

*Sherard v. Berks Cty.*, 576 F. App'x 66, 69 (3d Cir. 2014) ............................................. 15

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991) ... 4, 5

*Susinno v. Work Out World, Inc.*, No. 15-CV-5881-PGS, 2017 WL 5798643, at *1 (D.N.J. Nov. 28, 2017) ...................................................................................................................... 12

*Swift & Co. v. United States*, 276 U.S. 311, 326 [] (1928) ............................................... 12

*Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 139 n.5 (3d Cir. 2009) ........................ 13

*TSMC Tech., Inc. v. Zond, LLC*, No. CV 14-721-LPS-CJB, 2015 WL 661364, at *2 (D. Del. Feb. 13, 2015) ...................................................................................................................... 12

*U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 974 (11th Cir. 2014)............................................................................................................ 14

*U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 512 (3d Cir. 2007)........... 12

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) ................................... 15, 16

*United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920) ............................................ 15

*United States v. Davis*, 785 F.3d 498, 518 (11th Cir. 2015) .............................................. 9

*United States v. Stevens*, 533 F.3d 218, 233 (3d Cir. 2008) .............................................. 9

*United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) ........................................... 12

*Woods v. Wolfe*, 182 F.2d 516, 517 (3d Cir. 1950)........................................................... 17

## Statutes

47 U.S.C. § 227(b)(1)(A) ............................................................................................ passim

47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................... 2, 7, 10, 11

## Rules

FED. R. CIV. P. 12(B)(6) .................................................................................................... 3

## Regulations

47 C.F.R. § 64.1200(c)(1) ................................................................................................ 17

## Constitutional Provisions

U.S. CONST. ART III, § 2 .................................................................................................. 15

U.S. CONST. ART. III, § 2, CL. 1........................................................................................ 15

U.S. Const., Amdt. 1 ............................................................................................................. 4

**Publications**

Pub. L. 102-243............................................................................................................... 9

Pub. L. No. 114-74, 129 Stat. 584, 587 (2015)............................................................... 6

Defendant Liberty Power Corp, L.L.C. ("Defendant" or "Liberty Power"), by counsel, moves to dismiss Plaintiff Andrew R. Perrong's ("Plaintiff") Complaint in its entirety for failure to state a claim upon which relief can be granted and, in the alternative, moves to partially dismiss Plaintiff's Complaint requesting injunctive relief for lack of subject matter jurisdiction. In support thereof, Defendant states as follows.

## I.    <u>INTRODUCTION</u>

On May 11, 2018, Plaintiff filed his Complaint. D. I. 1.  The Complaint alleges Plaintiff received one telephone call from the Defendant on March 13, 2018, which allegedly used an automatic telephone dialing system ("ATDS") and an artificial or prerecorded voice and thus violated the Telephone Consumer Protection Act ("TCPA"). *Id.* ¶ 16.  Plaintiff seeks to represent a class of individuals who received similar telephone calls from an ATDS and telephone calls with an artificial or prerecorded voice. *Id.* ¶ 23.  In addition to monetary damages, Plaintiff seeks injunctive relief ordering/prohibiting Defendant from violating the TCPA  *Id.* ¶¶ 31(e), 34, 37, Prayer for Relief D.

As described below, Plaintiff's claims rest upon 47 U.S.C. § 227(b)(1)(A)(iii) and should be dismissed because Section 227(b)(1)(A)(iii) expressly contains content-based restrictions that violate both the First Amendment to the United States Constitution ("Constitution") and the Equal Protection Clause of the Fourteenth Amendment to the Constitution.  In the alternative, under the facts and Third Circuit precedent, Plaintiff lacks standing for a cause of action for permanent injunctive relief, his claim is moot, and the request for that relief should be dismissed with prejudice.

## II.    <u>FACTS</u>

On or about February 3, 2018, an individual named Caleb Sam made an outbound telephone call about cable television services. *See* **Exhibit A**, Audio MP3 #1; **Exhibit B**, Decl.

of Gary Donaldson ¶ 3.  During the call, the customer service representative confirmed Mr. Sam's telephone number was 215-338-3058. **Exhibit A** at 1:12-1:38.  Near the end of the call, the customer service representative asked Mr. Sam if he was interested in hearing about electricity plans. *Id.* at 2:15-2:50.  Mr. Sam stated "…not at this time, but you can call me in a day or so….". *Id.*

On March 13, 2018, Plaintiff received in an inbound telephone call on his telephone number, 215-338-3458. Compl. ¶¶ 15-16.  During this call, the customer service representative asked to confirm he was speaking to Caleb Sam. *See* **Exhibit C**, Audio MP3 #2 at 1:55-2:40; **Exhibit B** Decl. of Gary Donaldson ¶ 4.  The Plaintiff did not correct the customer service representative and explain that his last name was not "Sam." *See* **Exhibit C**, Audio MP3 #2 at 1:55-2:40.  Next, the customer service representative provided Caleb Sam's address from the February 3, 2018 call. *Id.* at 2:35-250.  The Plaintiff corrected the representative and provided his address. *Id.* at 2:50-3:40.  Plaintiff feigned interest in changing electricity suppliers. *Id.* at 3:38-5:00.  Plaintiff told the customer service representative he was recording the call only after the confusion regarding his name and address and only once the name of the energy supplier was provided. *Id.* at 4:40-5:00.  Plaintiff then terminated the call before completing the third-party verification. *Id.* at 6:30-7:40.

47 U.S.C. § 227(b)(1)(A)(iii) contains content-based restrictions that violate both the First Amendment to the U.S. Constitution and the Equal Protection Clause of the Fourteenth Amendment to the Constitution.  This requires the Complaint to be dismissed in its entirety.  In the alternative, the above facts establish that Plaintiff accidentally received one telephone call due to a misunderstanding.  There is no likelihood Plaintiff will receive imminently another

phone telephone call from Defendant, this request for injunctive relief is moot, Plaintiff lacks

standing to bring a claim for injunctive relief, and that claim should be dismissed with prejudice.

III.   <u>ARGUMENT</u>

   A.   **Defendant's Motion to Dismiss under FED. R. CIV. P. 12(B)(6) Should be Granted Because the Relevant Portion of the TCPA Is Unconstitutional**

   The Court should grant Defendant's Motion to Dismiss for Failure to State a Claim Upon

Which Relief Can Be Granted because the relevant section of the TCPA is unconstitutional and

therefore Plaintiff has failed "to state a claim upon which relief can be granted" pursuant to FED.

R. CIV. P. 12(B)(6).  To survive a motion to dismiss, a complaint must "state a claim to relief that

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  The complaint must allege "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  As discussed below, the section of the TCPA that the Plaintiff relies

upon is unconstitutional because it is a content-based law that does not survive strict scrutiny.

Therefore, because Plaintiff's Complaint is based upon a statute that is unconstitutional, the

Court must grant Defendant's Motion and dismiss the Complaint in its entirety.

   The TCPA violates both the Free Speech and the Equal Protections provisions of the

Constitution.  Under the Free Speech Clause of the First Amendment to the Constitution, the

"government has no power to restrict expression because of its message, its ideas, its subject

matter, or its content." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790–91 (2011).

Similarly, under the Equal Protection Clause of the Constitution, the government has no power to

"discriminat[e] among speech-related activities" because of "the content of the [speaker's]

communication." *Carey v. Brown*, 447 U.S. 455, 461 (1980).  It is well-settled that content-based

regulation of speech complies with the Free Speech and Equal Protection clauses only if the

Government can demonstrate that it passes strict scrutiny. *See Reed v. Town of Gilbert, Ariz.,* 135 S. Ct. 2218, 2232 (2015), which was adopted by the Third Circuit in *Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 160 (3d Cir. 2016).

**1.    Laws that Regulate the Content of Speech are Presumptively Unconstitutional**

It is axiomatic that "freedom of speech" is one of the foundational concepts in the Constitution, which is found in the First Amendment and is applicable to the States through the Fourteenth Amendment, which prohibits the enactment of laws "abridging the freedom of speech." U.S. CONST., AMDT. 1.  In *Reed*, the Court held that under the Constitution "a government 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed,* 135 S. Ct. at 2227 (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).  The Court concluded that content-based laws—those that target speech based on its communicative content—**are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests**. *Reed,* 135 S. Ct. at 2227 (emphasis added) (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992) and *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd*., 502 U.S. 105, 115 (1991)).

The Court in *Reed* analyzed a municipal code governing the manner in which people may display outdoor signs. *Reed,* 135 S. Ct. at 2224.  The Court explained that government regulation of speech is "content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2228.  The Court also held that the analysis of whether a statute is "content-based" involves a "commonsense meaning of the phrase 'content based' requir[ing] a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* (citations omitted).  The Court acknowledged that

some facial distinctions based on a message are obvious (defining regulated speech by particular subject matter) while others are more subtle (defining regulated speech by its function or purpose). *Id.* at 2227.  The Court concluded that "[b]oth are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id.*

> ### 2.     The Content-Based Prohibitions Addressed in *Reed* Do not Depend Upon the Purpose for the Law

The Court in *Reed* concluded that if a law "is content based on its face [it] **is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech**.'" *Reed*, 135 S. Ct. at 2228 (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) (emphasis added)).  In fact, a content-based law can be held to be unconstitutional without a demonstration of any "illicit legislative intent" or any "evidence of an improper censorial motive." *Reed*, 135 S. Ct. at 2228 (quoting *Simon & Schuster, Inc.*, 502 U.S. at 117).  In other words, "an innocuous justification cannot transform a facially content-based law into one that is content neutral. . . because "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech.  That is why the First Amendment expressly targets the operation of the laws—i.e., the 'abridg[ement] of speech'—rather than merely the motives of those who enacted them." *Reed*, 135 S. Ct. at 2229 (quoting U.S. CONST., AMDT. 1).

> ### 3.     Laws that Only Ban Certain Speakers or Only Ban Certain Ideas Do not Make a Content-Based Law Constitutional

Finally, the Court in *Reed* emphasized that content-based laws are not unconstitutional only if they are intended to "suppress certain ideas." *Reed*, 135 S. Ct. at 2229 (quoting *City of Cincinnati*, 507 U.S. at 429).  The illegality of "content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire

topic." *Reed*, 135 S. Ct. at 2230 (quoting *Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980)). The Court explained that a speech regulation targeted at specific subject matter can be found to be "content-based" even if it does not discriminate among viewpoints within that subject matter. The Court explained in *Reed* that a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed. *See City of Cincinnati*, 507 U.S. at 428. The Court in *Reed* recognized that since 2010, "restrictions based on the identity of the speaker are all too often simply a means to control content." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010).

### 4. The TCPA Is a Content-Based Statute

Section 227(b)(1)(A) of the TCPA originally prohibited any call to a cell phone using an ATDS under defined circumstances. However, the TCPA was amended in 2015 to make a content-based exemption for calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A) & (A)(iii)*; see also* Pub. L. No. 114-74, 129 Stat. 584, 587 (2015). Section 227(b)(1)(A)(iii) of the TCPA currently states as follows, with emphasis added:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, **unless such call is made solely to collect a debt owed to or guaranteed by the United States**;

> This 2015 amendment to the TCPA (which added an exemption for debts owed to or guaranteed by the United States) is critically important to the content-based nature of the TCPA, because coverage under this section of the TCPA turns **entirely** upon the content of the message

6

conveyed by the speaker of the telephone call. For example, a telephone call that attempted to collect a government-backed student loan would be permissible under the TCPA. However, if the content of the telephone call was to promote a political message, or to inform the listener about a favorable business transaction for the sale of electricity services, then the telephone call would be deemed to be impermissible under the amended TCPA. Accordingly, it is clear that the TCPA law is "content-based" on its face under the standards set forth in *Reed,* because Section 227(b)(1) only prohibits the use of ATDS for certain content communications, but not for all content.

Plaintiff acknowledges in the Complaint that the "content" of the subject calls was to inform parties of business opportunities, not to collect a debt owed to the United States government. "Defendant could provide Plaintiff with a discount on Plaintiff's energy bill and directed Plaintiff to press "1" to speak to an account representative. After Plaintiff pressed "1," a person with whom Plaintiff spoke over the telephone identified the caller as Liberty Power, i.e., Defendant." Compl. ¶ 16. As a result, based upon the *Reed* decision and other applicable precedent, the TCPA would be deemed to be constitutional **only** if the TCPA survives examination under the U.S. Supreme Court's "strict scrutiny" standard. Since the Court issued the *Reed* decision, other courts have held that state laws materially indistinguishable from the TCPA are content-based, subject to strict scrutiny, and are unconstitutional. *See Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015); *Gresham v. Rutledge*, 198 F. Supp. 3d 965, 972 (E.D. Ark. 2016).

In *Free Speech Coalition*, the Third Circuit analyzed recordkeeping and labeling requirements under child protection statutes and concluded that the inspection provisions of the statutes were facially unconstitutional under the Fourteenth Amendment. *Free Speech Coal.,*

*Inc.*, 825 F.3d at 159.  The Third Circuit summarized the appropriate test for content-based statutes as follows:

> Under *Reed*, in determining whether the Statutes are content based or content neutral for purposes of our First Amendment analysis—and thus subject to strict versus intermediate scrutiny—our first step must be to conduct a facial examination of the Statutes.  *Reed*, at 2228. (stating that the "first step in the content-neutrality analysis [is] determining whether the law is content neutral on its face").  **Only if a law is content neutral on its face may we then look to any benign purpose**. *Id.*  ("That is why we have repeatedly considered whether a law is content neutral on its face *before* turning to the law's justification or purpose.").

*Id.* at 161 (emphasis added).  The Third Circuit ultimately remanded the case for review under the strict scrutiny standard, in part, because the Third Circuit found that the statutes were content based "on its face." *Id.*

### 5.  The TCPA Does Not Survive the Required Strict Scrutiny Examination

The *Reed* Court explained that the strict scrutiny test of content-based laws "…requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest[.]'" *Reed*, 135 S. Ct. at 2232 (citing *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (quoting *Citizens United*, 558 U.S. at 340)). *See Free Speech Coal., Inc.*, 825 F.3d at 157 (In the Third Circuit, a content-based restriction on speech, such as § 227(b)(1)(A)(iii), is constitutional only if it: (1) advances a substantial governmental interest; (2) does not burden substantially more speech than is necessary (*i.e.*, the statute must be narrowly tailored); and (3) leaves open ample alternative channels for communication).

The provision of the TCPA on which Plaintiff relies, 47 U.S.C. § 227(b)(1)(A)(iii), does not survive a strict scrutiny because it draws impermissible lines based on the content of the call and viewpoint that is expressed by the caller. Compl. ¶¶ 9-10.  First, the goal in the TCPA of protecting people from autodialed telephone calls does not advance a compelling government

8

interest that is related to any essential government function, such as national defense or economic prosperity. Congress set forth the two interests the TCPA aims to protect: reducing congestion of phone lines and protecting residential privacy. *See* Pub. L. 102-243, § 2, 105 Stat. 2394-95 (1991). While the federal government arguably has a legitimate interest in both of these interests, neither interest is compelling. Curtailing some forms of telephone traffic is not remotely close to an interest that the Supreme Court or other courts have found compelling, like protecting the integrity of elections. *See Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1219 (11th Cir. 2009). In addition, courts such as the Eleventh Circuit have afforded significantly lower privacy protections to cellular telephones than to the home. The Eleventh Circuit Court has even gone so far as to permit warrantless tracking of cell phone historic cell site data. *See United States v. Davis*, 785 F.3d 498, 518 (11th Cir. 2015). Nor do calls to cell phones implicate the same sort of privacy interests as the home. Because subscribers can relatively easily ignore, or block unwanted calls, the recipients are not a "captive" audience. *Frisby v. Schultz*, 487 U.S. 474, 487 (1988).

Second, the TCPA does not survive a strict scrutiny review because it is not narrowly tailored. Courts have held that the phrase "narrowly tailored" means neither under inclusive nor over inclusive. *United States v. Stevens*, 533 F.3d 218, 233 (3d Cir. 2008), *aff'd*, 559 U.S. 460 (2010). The exemption in the TCPA for collection of government-owned debts is over inclusive because it discriminates based upon who the speaker is and based upon the content of the speech. Speakers that are affiliated with or acting on behalf of the federal government, for example, are favored under the TCPA over private parties—including individuals, corporations, and non-profit entities. As a result, the TCPA illegally suppresses private speech except where it expresses a message that will financially benefit the federal government. Thus, the TCPA is

classic content and viewpoint discrimination statute, which renders § 227(b)(1)(A)(iii)

"presumptively unconstitutional." *Reed*, 135 S. Ct. at 2226. Section 227(b)(1)(A)(iii) is also

over inclusive because it penalizes certain speech regardless of whether the listener has

expressed a privacy interest in not hearing it. In other words, Congress could have chosen a far

less restrictive alternative (*e.g.*, permitting third parties to opt out of communications they do not

want) rather than requiring them to opt in to ones they do want to receive. *See Cahaly*, 796 F.3d

at 405.

The TCPA's approach to autodialed calls and pre-recorded voice calls is also under

inclusive. Plaintiff, for example, cannot claim that placing strict limits on business

communications is necessary to protect privacy interests while at the same time allowing

unlimited numbers of calls from parties that are seeking to collect debts because such actions

create the same problem. *Reed*, 135 S. Ct. at 2232. The TCPA's approach to autodialed calls and

pre-recorded voice calls is under inclusive because the TCPA's attempt to restrict business

speech through telephone calls is not the least restrictive alternative; there are less restrictive

means available. 47 U.S.C. § 227(b)(1)(A)(iii) is thus not narrowly tailored to any important

government interests. In fact, the exception that is set forth in § 227(b)(1)(A)(iii) directly

undermines the constitutionality of the TCPA because the statute allows telephone calls carrying

a government-favored message that implicate the exact same concerns the statute purports to

address. The TCPA is thus underinclusive "judged against its asserted justification, which . . . is

alone enough to defeat it." *Brown*, 564 U.S. at 802.

Consequently, because the TCPA is a content-based statute that regulates the speech at

issue here and, because the TCPA does not survive a strict scrutiny review, the TCPA is

unconstitutional, and thus Plaintiff fails to state a claim upon which relief can be granted. Plaintiff's claim. The complaint should be dismissed in its entirety with prejudice.

###### 6. Other Court Decisions that Have Considered the TCPA Have Failed to Fully Consider the Discriminatory Treatment of Protected Speech

*Am. Ass'n of Political Consultants v. Sessions*, No. 5:16-CV-252-D, 2018 WL 1474075, at *1 (E.D.N.C. Mar. 26, 2018) concluded that the TCPA is content-based restriction subject to strict scrutiny. This district court, however, incorrectly held that the TCPA was able to pass the strict scrutiny test, in part, because it failed to correctly apply the strict scrutiny test to the content-based statutory language in § 227(b)(1)(A)(iii) of the TCPA. The district court concluded that the "government-debt exception is a narrow exception that furthers a compelling interest" without fully considering the competing compelling interests that corporations have in using the telephone, an efficient form of communication, to reach potential customers. *Id.* at 6.

Using the contours of *Free Speech Coalition*, this Court should focus on the unconstitutionality of the law which allows collection of debts that are owed to or guaranteed by the federal government, but impermissibly infringes upon rights of a corporation to engage in free speech under the First Amendment. The Supreme Court has repeatedly held that laws that infringe upon the right of a corporation to communicate a message in a reasonable manner should be held to be unconstitutional. *See Citizens United*, 553 U.S. at 392 (Scalia, J., concurring in part and concurring in judgment) ("Indeed, to exclude or impede corporate speech is to muzzle the principal agents of the modern free economy. We should celebrate rather than condemn the addition of this speech to the public debate."). Section 227(b)(1)(A)(iii) of the TCPA should be deemed to be unconstitutional to protect such valuable rights, and thus, Plaintiff's claims should be dismissed.

**B. In the Alternative, Defendant's Motion to Dismiss under FED. R. CIV. P. 12(B)(1) Should be Granted Because the Plaintiff Does not Have Standing for Injunctive Relief**

### 1. Legal Standard for Permanent Injunctive Relief

Standing to seek an injunction depends on whether the plaintiff is likely to suffer future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). "The purpose of an injunction is to prevent future violations, *Swift & Co. v. United States*, 276 U.S. 311, 326 [] (1928) and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. **The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive**." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (emphasis added).

"Standing is a jurisdictional matter and thus 'a motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1).'" *Susinno v. Work Out World, Inc.*, No. 15-CV-5881-PGS, 2017 WL 5798643, at *1 (D.N.J. Nov. 28, 2017) (TCPA case) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). A factual challenge to subject matter jurisdiction allows a Court "consider and weigh evidence outside the pleadings to determine if it [had] jurisdiction." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 512 (3d Cir. 2007) (quoting *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citation omitted)). "In reviewing a factual attack, the court may consider evidence outside the pleadings." *TSMC Tech., Inc. v. Zond, LLC*, No. CV 14-721-LPS-CJB, 2015 WL 661364, at *2 (D. Del. Feb. 13, 2015) (citing *Gould*, 220 F.3d at 176). "The plaintiff has the burden of persuasion to convince the court it has jurisdiction." *Gould*, 220 F.3d at 178 (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

"…[S]tanding tests whether the particular litigant is the proper party to raise the issues involved." *Conover v. Montemuro*, 477 F.2d 1073, 1085 (3d Cir. 1972). To determine whether a Plaintiff has standing to seek injunctive relief, Courts ask whether he can show that he is likely to suffer future injury from the defendant's conduct. *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (internal quotation marks and citations omitted). "Typically, '[i]n the class action context, [this] requirement must be satisfied by at least one named plaintiff.'" *Richardson v. Bledsoe*, 829 F.3d 273, 278 (3d Cir. 2016) (quoting *McNair*, 672 F.3d at 223). *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("Laidlaw is right to insist that a plaintiff must demonstrate standing separately for each form of relief sought." (citing *Lyons*, 461 U.S. at 109 for the proposition that "notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief."). *See Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (Plaintiff must establish constitutional standing for each "separately for each form of relief sought."); *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 139 n.5 (3d Cir. 2009) (standing "is not dispensed in gross") (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). In sum, Plaintiff has the burden of demonstrating an ongoing case or controversy regarding Defendant violating the TCPA to warrant the equitable remedy of injunctive relief. Plaintiff cannot make this showing, his case is moot, and the Court lacks subject-matter jurisdiction to consider it.

"When permanent injunctive relief is sought pursuant to statutory authority, courts typically consider only two factors: (1) whether there is an actual violation of the statute, and (2) whether there is a likelihood of future violations." *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) (citing *Commodity Futures Trading Comm. v. British American Commodity Options Corp.*, 560 F.2d 135, 142 (2d Cir. 1977); *SEC v. Management*

*Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)). *See also U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 974 (11th Cir. 2014) (One who seeks injunctions for future violations must also show a reasonable likelihood of future violations).

Judicial decisions on injunctive relief for TCPA claims from around the country follow the above and look to the likelihood of future harm when denying injunctive relief. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (declining to issue permanent injunction in TCPA case because Plaintiff failed to show likelihood of future harm nor the inadequacy of his remedy at law); *Bank v. Caribbean Cruise Line, Inc.*, No. 12-CV-584, 2014 WL 1883586, at *2 (E.D.N.Y. May 12, 2014) (refusing to issue an injunction "… absent a showing that there is a reasonable likelihood that [Defendant] will engage in future violations of the TCPA."), *vacated on other grounds*, 606 F. App'x 28 (2d Cir. 2015); *Hamilton v. Voxeo Corp.*, No. CIV.A. 3:07-CV-404, 2009 WL 1868541, at *3 (S.D. Ohio June 25, 2009) ("Nevertheless, Plaintiff has not shown that a preliminary injunction is necessary to prevent further violations of the TCPA."); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 325–26, 130 P.3d 1280, 1285 (2006) (affirming the trial court's denial of injunction after Defendant sent two faxes violating the TCPA and holding "…even a party requesting an injunction, who has shown that the statutory conditions have been met, must demonstrate a likelihood of future violations before an injunction will issue."); *Cf. Minnesota ex rel. Hatch*, 282 F. Supp. 2d at 980 (issuing an injunction in a TCPA case because "[f]urthermore, it is evident that, absent an injunction, [Defendant] would continue to violate the TCPA.").

Plaintiff does not have standing to seek a permanent injunction on his TCPA claim individually or on behalf of the class because he has failed to plead any possibility of future

harm, and thus the claim is moot, and this Court lacks subject matter jurisdiction to adjudicate that claim.

### 2.    Legal Standard for Mootness

Federal Courts have jurisdiction to hear cases and controversies under "…the Laws of the United States..." U.S. CONST. ART. III, § 2, CL. 1. "The federal judicial power extends only to Cases or Controversies. U.S. CONST. ART III, § 2. The case or controversy requirement demands that a cause of action before a federal court present a justiciable controversy…". *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) (internal quotation marks omitted). "It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "Article III requires a live case or controversy throughout the entire litigation; if no live controversy exists, the court must dismiss the case for lack of jurisdiction." *Sherard v. Berks Cty.*, 576 F. App'x 66, 69 (3d Cir. 2014) (citing *Lusardi*, 975 F.2d at 974).

"Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions.'" *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (quoting *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920) (quoting *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314 (1893)). "…[M]ootness has two aspects: 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal quotation marks omitted)); *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985) (same).

"The interest required of a litigant to maintain a claim under the mootness doctrine is the same as that required to attain standing." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 699 (3d Cir. 1996) (citing *Geraghty*, 445 U.S. at 397). "Named plaintiffs are the individuals who seek to invoke the court's jurisdiction and they are held accountable for satisfying jurisdiction. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 832, 119 S. Ct. 2295, 2308 (1999). Thus, a class action is permissible so long as at least one named plaintiff has standing." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 364 (3d Cir. 2015) (citing cases). "When claims of the named plaintiffs become moot before class certification, dismissal of the action is required." *Goode v. Warden Curran Fromhold Corr. Facility*, 669 F. App'x 622, 623 (3d Cir. 2016) (quoting *Brown v. Philadelphia Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003)); *Lusardi*, 975 F.2d at 974 (same) (citing cases).

Injunctive relief will be denied where the controversy underlying such requested relief has become moot. *Ford v. Reynolds*, 167 Fed. App'x. 248, 249 (2d Cir. 2006); *Cody v. Cox*, 509 F.3d 606, 609 (D.C. Cir. 2007). "To the extent that [Plaintiff] sought injunctive relief, essentially, an order for a hearing date in Family Court before the scheduled date in November 2012, his complaint was mooted by the passage of time. A federal court does not have the power to decide moot questions." *Prater v. City of Philadelphia Family Court*, 569 F. App'x 76, 78 (3d Cir. 2014)

For putative class actions like this case, in determining the issue of mootness, this court will look only to the claims of the named plaintiffs, since no class has yet been certified. *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430 (1976). "Past exposure to illegal conduct does not in itself show a present case or controversy … **if unaccompanied by any continuing, present adverse effects**." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 699

(3d Cir. 1996) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (emphasis added); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (same). "If a defendant has discontinued the challenged activities a case is moot if there is no reasonable expectation that the wrong will be repeated." *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1108 (3d Cir. 1985) (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) and *Hudson v. Robinson*, 678 F.2d 462, 465 (3d Cir. 1982)). "We agree that an injunction may not be imposed on a defendant to punish him for his past misconduct." *Woods v. Wolfe*, 182 F.2d 516, 517 (3d Cir. 1950).

### 3. Plaintiff Received One, Misdialed Telephone Call and There is No Likelihood of Future Harm.

This case is as simple as it gets. It stems from one of the oldest telephone errors in history, a misdial due to a transposed digit. It is clear that Plaintiff does not have standing to pursue injunctive relief in his Complaint because he received **one** misdialed telephone call and there is no likelihood of him being called again. First, Plaintiff did not receive a telephone call from an ATDS. Instead, Caleb Sam was a "warm lead," which turned into an outbound call to Plaintiff due to a transposed digit leading to a misdial. **Exhibit B**, Decl. of Gary Donaldson ¶ 5. The customer service representative had permission from Caleb Sam to call him about electricity plans. However, the customer service representative inadvertently dialed the extension "3548" instead of "3058" and reached Plaintiff. Secondly, Plaintiff is on Liberty Power's internal do-not-call list.[1] **Exhibit B**, Decl. of Gary Donaldson ¶ 6. There is no reasonable likelihood of Plaintiff ever receiving a call from the Defendant again. These facts make the claim for injunctive relief moot, and the Court should dismiss it for lack of subject matter jurisdiction.

---

[1] Plaintiff makes a throwaway allegation that he is on the national do-not-call list. Compl. ¶ 20. However, he does not seek relief under that portion of the TCPA. *Id.* at ¶¶ 21, 23. *See* 47 C.F.R. § 64.1200(c)(1), prohibiting calls to telephone numbers registered on the do-not-call list (not cited by Plaintiff in his Complaint).

## IV. <u>CONCLUSION</u>

**WHEREFORE**, Liberty Power asks this Court to dismiss the Complaint's request for injunctive relief with prejudice, and grant any other relief it deems just and proper.

Respectfully submitted,

**LIBERTY POWER CORP., L.L.C.**

By: <u>/s/ Peter Murphy</u>
Peter Murphy (DE Id. # 5043)
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801
Telephone: 302-552-2906
Facsimile: 302-574-7401
Email pmurphy@eckertseamans.com
*Co-Counsel for Defendant Liberty Power Corp., L.L.C.*

Charles A. Zdebski (of counsel)
Jeffrey P. Brundage (of counsel)
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
1717 Pennsylvania Avenue, N.W.
12th Floor
Washington, D.C.  20006
Telephone:  202-659-6676
Facsimile:  202-659-6699
Email: czdebski@eckertseamans.com
Email:  jbrundage@eckertseamans.com
*Co-Counsel for Defendant Liberty Power Corp., L.L.C.*