# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANDREW R. PERRONG,<br>on behalf of himself and<br>all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY POWER CORP, L.L.C.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:18-cv-000712-GMS<br><br>CLASS ACTION |

**BRIEF REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND PARTIAL MOTION TO DISMISS PLAINTIFF'S <u>COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

Peter Murphy (DE Id. # 5043)
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801
Telephone: 302-552-2906
Facsimile: 302-574-7401
Email: pmurphy@eckertseamans.com
*Counsel for Defendant Liberty Power Corp., L.L.C.*

July 24, 2018

# TABLE OF CONTENTS

I.    The TCPA is a Content-Based Statute That Must Be Reviewed Under the Strict Scrutiny Test ...................................................................................................................................1

II.    The TCPA Does Not Survive Review under the Strict Scrutiny Test................................3

III.   Plaintiff's Brief Claims That Defendant Made "Thousands" of Calls to Individuals in Their Homes, But Plaintiff's Brief Fails to Provide *Any* Documentary Support for Such Baseless Assertions ..............................................................................................................7

IV.   The Record Evidence Establishes That Further Likelihood of Harm is Unlikely after the One Misdial at Issue ...........................................................................................................7

# **TABLE OF AUTHORITIES**

**Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018) ................................ 4
*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. [721],
    131 S.Ct. 2806, 2817, 180 L.Ed.2d 664 (2011) ...................................................................... 3
*Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ................................................................... 2
*Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 865 (3d Cir. 1977) ........................................... 9
*Chao v. Shingara*, No. 4:04-cv-2805, 2005 WL 8144893, at *5 (M.D. Pa. Jan. 28, 2005) ........... 8
*Citizens United v. Fed Election Comm'n*, 558 U.S. 310, 340 (2010) ............................................ 3
*Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 555 (4th Cir. 2013) ................................... 2
*Commodity Futures Trading Comm. v. British American Commodity Options Corp.*, 560 F.2d
    135, 142 (2d Cir. 1977) ........................................................................................................... 8
*Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) .................. 8
*Free Speech Coalition, Inc. v. Attorney General United States*, 825 F.3d 149, 160
    (3d. Cir. 2016) ......................................................................................................................... 2
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) .......... 8
*Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1148 (D. Minn. 2017) ........ 2
*IMS Health Inc. v. Sorrell*, 630 F.3d 263, 278 (2d Cir. 2010), *aff'd,* 564 U.S. 552 (2011) ............ 4
*Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 681 (1992) ................................ 2
*Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1242–43, 1246 (10th Cir. 2004) ...... 4, 5
*Martin v. City of Struthers, Ohio*, 319 U.S. 141, 147–49 (1943) ................................................. 4
*Mey v. Venture Data, LLC*, 245 F. Supp.3d 771, 781 (N.D. W. Va. Mar. 29, 2017) .................... 2
*Nat'l Coal. of Prayer, Inc. v. Carter*, 455 F.3d 783, 789–90 (7th Cir. 2006) ............................... 4
*Nat'l Fed'n of the Blind v. F.T.C.*, 420 F.3d 331, 342 (4th Cir. 2005) .......................................... 5
*Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072–73 (3d Cir. 1994) ............................................... 6
*Reed v. Town of Gilbert, Arizona, et al.* 135 S.Ct. 2218, 2232 (2015) ................................. 1, 2, 3
*Rowan v. United States Post Office*, 397 U.S. 728 at 737-738 (1970) ......................................... 4
*Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) ......................... 8
*United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968) ............................................................ 6
*United States v. Playboy Entm't Group, Inc.,* 529 U.S. 814-15 (2000) ..................................... 4, 5
*United States v. Stevens*, 533 F.3d 218, 232 (3d Cir. 2008), *aff'd*, 559 U.S. 460,
    130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) ............................................................................. 3
*United States v. Stover*, 650 F.3d 1099, 1103 (8th Cir. 2011) ...................................................... 8
*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ............................................................ 2
*Warth v. Seldin*, 422 U.S. 490, 501–02 (1975) ............................................................................. 8

**Statutes**

15 U.S. Code § 6101 ...................................................................................................................... 4
47 U.S.C. § 227(b)(1)(A) ........................................................................................................... 3, 6
47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................................................... 1
47 U.S.C. § 608 .............................................................................................................................. 6

Defendant Liberty Power Corp, L.L.C. ("Defendant" or "Liberty Power"), by counsel, files this Reply in support of its motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted and, in the alternative, to partially dismiss Plaintiff's Complaint requesting injunctive relief for lack of subject matter jurisdiction. D. I. # 8, 8-1.  In further support thereof, Defendant states as follows.

### I.    The TCPA is a Content-Based Statute That Must Be Reviewed Under the Strict Scrutiny Test

The First Amendment issues raised by the TCPA in this case must be reviewed under the strict scrutiny standard.  Paradoxically, Plaintiff contends that the subject TCPA statute, 47 U.S.C. § 227(b)(1)(A)(iii), is not unconstitutional because it has been upheld by numerous courts under the "intermediate scrutiny" standard,[1] while also conceding that "content-based restrictions are subject to strict scrutiny"[2] in accordance with United States Supreme Court precedent in *Reed*.[3]  Plaintiff's second position is correct; content-based speech restrictions are subject to strict scrutiny.  In an attempt to support use of the application of the "intermediate scrutiny" standard, Plaintiff mistakenly references a Seventh Circuit case that considered a state law, not the TCPA, as alleged support for its position.  Moreover, most of the cases cited in Plaintiff's Brief (*i.e. Gomez, Van Bergen,* and *Moser*) were all decided <u>before</u> the statutory change to the TCPA that is the primary focus of Defendant's argument.

These cases were also decided <u>before</u> the Supreme Court issued the *Reed* decision.  As detailed in Plaintiff's Brief, the *Reed* case represents a sea change in First Amendment case law in that it did away with the notion that when determining whether a statutory restriction on

---

[1] Pl.'s Am. Br. in Opp'n 5.
[2] *Id*. 6.
[3] *See Reed v. Town of Gilbert, Arizona, et al.* 135 S.Ct. 2218, 2232 (2015).

speech is content-neutral, "[t]he government's purpose is the controlling consideration."[4] The Supreme Court in *Reed* made clear that the government's justification or purpose in enacting the law is irrelevant.[5] As such, the "intermediate scrutiny" cases referenced by Plaintiff's Brief that analyzed the government's motive in enacting a challenged statute are irrelevant to the constitutional challenge raised by Defendant.[6] Pl.'s Am. Br. in Opp'n 8.

Moreover, Plaintiff's Brief in fact concedes that a strict scrutiny test is applicable. Plaintiff's Brief references six (6) post-*Reed* district court cases that performed a strict scrutiny analysis; this reliance undercuts any argument that an "intermediate scrutiny" test somehow should be applied to reviewing the constitutionality of the TCPA.[7] Plaintiff's cites only one case post-*Reed* that analyzed the TCPA using an intermediate scrutiny analysis, *Mey v. Venture Data, LLC*, 245 F. Supp.3d 771, 781 (N.D. W. Va. Mar. 29, 2017). However, the *Mey* decision "provides no written analysis to support the conclusion that the TCPA's exceptions are content-neutral" and "the legal authority that *Mey* cites in support of the proposition that the TCPA's exceptions are relationship-based is a decision addressing Indiana's analog to the TCPA, which has different exceptions than the TCPA."[8] As such, this Court should follow the example of the

---

[4] *See e.g., Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 555 (4th Cir. 2013) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Contrary to the Plaintiff's assertion that *Reed* had no effect on existing case law, many circuit courts have noted that *Reed* has abrogated several notable decisions. *See e.g., Free Speech Coalition, Inc. v. Attorney General United States*, 825 F.3d 149, 160 (3d. Cir. 2016) (noting that Reed required the Court to reevaluate challenged statutory language under strict scrutiny rather than intermediate scrutiny) ("*Free Speech Coalition*"); s*ee also Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015).
[5] *Reed*, 135 S.Ct. at 2228–29.
[6] Plaintiff also spends a great deal of effort in his brief related to a public forum analysis (Pl.'s Am. Br. in Opp'n 7-8) using case law which is devoted solely to governmental restrictions on the use of its own property and which is entirely irrelevant to the matters at issue in this proceeding. *See Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 681 (1992)("First, much of the evidence is irrelevant to *public* fora analysis, because sites such as bus and rail terminals traditionally have had *private* ownership.")(emphasis in the original); *see also Reed*, 135 S. Ct. at 2232 (noting that content-based regulation of speech on private property is subject to strict scrutiny).
[7] *Id.* 9
[8] *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1148 (D. Minn. 2017) (criticizing the reasoning in the *Mey* decision).

vast majority of the recent cases cited by the Plaintiff and apply the strict scrutiny test to the TCPA.

## II. The TCPA Does Not Survive Review under the Strict Scrutiny Test

The U.S. Supreme Court in *Reed* explained that the strict scrutiny test of content-based statutes operates as follows:

> [strict scrutiny] requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest,'" *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. [721], 131 S.Ct. 2806, 2817, 180 L.Ed.2d 664 (2011) (quoting [*Citizens United v. Fed Election Comm'n*, 558 U.S. 310, 340 (2010), 130 S.Ct. 876).][9]

The provision of the TCPA on which Plaintiff relies, 47 U.S.C. § 227(b)(1)(A), does not survive a strict scrutiny review, in part, because the statute draws impermissible lines based on the content of the call. Courts have held that the phrase "narrowly tailored" in the strict scrutiny test means that a statutory restriction on speech must be neither under inclusive nor over inclusive.[10] The subject portion of the TCPA is indeed over inclusive because its restrictions improperly apply to *all* commercial calls, thereby incorrectly assuming that consumers do not wish to receive any of the currently prohibited commercial telephone calls, absent prior express consent. Pl.'s Am. Br. in Opp'n 13. However, there is no evidence to suggest that the TCPA is not currently prohibiting many calls that consumers would wish to receive absent its restrictions. Indeed, if people did not positively react to at least some of the calls that are subject to the TCPA currently, there would be no incentive on the part of the calling parties to make such phone calls. Without such an incentive, no calling party would put forth the effort to make the phone calls, and there would no need for the TCPA to even exist. Therefore, at least some consumers must

---

[9] *Reed* 135 S.Ct. at 2232. Moreover, a content-based restriction on speech is "presumed invalid," and the Government bears the burden of showing its constitutionality. *United States v. Stevens*, 533 F.3d 218, 232 (3d Cir. 2008), *aff'd*, 559 U.S. 460, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010)(internal citation omitted).
[10] *See, e.g.*, *Stevens*, 533 F.3d at 233.

welcome at least some of the calls that present content subject to the TCPA. And thus, because there is a blanket prohibition on calling absent opt-out of the prohibition by the recipient, some phone calls that consumers would have wanted to receive are not allowed to be made (*i.e.*, the statute must be overinclusive).

Indeed, while six district courts have properly applied a strict scrutiny analysis to the TCPA, each of those courts has failed to analyze the direct applicability of the Supreme Court's decision in *United States v. Playboy Entm't Group, Inc.,* 529 U.S. 814-15 (2000) to the "opt-out" rather than "opt-in" approach of the statute. *Playboy Entm't Group, Inc.* is the leading case in one of a long line of cases where courts have repeatedly found that statutes are not "narrowly tailored" when they prohibit speech to all residences where it is feasible to allow only those households who do not wish to receive the speech to opt in to privacy protection.[11]

An illustration of this principle is in fact the national do-not-call registry, an "opt-in" rather than an "opt-out" regime that, similar to the TCPA's purpose, is designed to reduce intrusions into personal privacy and to reduce the risk of telemarketing fraud and abuse that accompany unwanted telephone solicitation.[12] However, unlike the TCPA, the national do-not-call registry directly advances those goals with the opt-in approach that is not overinclusive. So far, more than 50 million telephone numbers have been registered on the do-not-call list, and the do-not-call regulations now protect these households from receiving most unwanted

---

[11] *See, e.g., Playboy Entm't Group, Inc.,* 529 U.S. at 814-15 (noting that blocking certain channels to all cable subscribers is unnecessarily restrictive, as the subscribers who did not wish to receive these channels could opt out of receiving them); *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 147–49 (1943) (invalidating ban on door-to-door solicitation while noting that regulation banning solicitation when homeowner has indicated a desire not to be disturbed is appropriate); *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 278 (2d Cir. 2010), *aff'd,* 564 U.S. 552 (2011); *see also Rowan v. United States Post Office*, 397 U.S. 728 at 737-738 (1970); *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1242–43, 1246 (10th Cir. 2004) (upholding "do not call" list as constitutional restriction on commercial speech in part because consumers actively joining "do not call" registry before commercial telephone calls are barred is less restrictive of speech than requiring consumers to consent to receiving such calls before they could be made).
[12] *See* 15 U.S. Code § 6101; *see also ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018).

telemarketing calls.[13] According to the telemarketers' own estimate, 2.64 telemarketing calls per week—or more than 137 calls annually—were directed at an average consumer before the do-not-call list came into effect.[14] In fact, absent the do-not-call registry, telemarketers would call those consumers who have already signed up for the registry an estimated total of 6.85 *billion* times each year.[15]

The district court cases cited by the Plaintiff which allowed the TCPA to survive a strict scrutiny analysis all made the same mistake. They all assumed that an "opt-in" regime for the TCPA, such as the do-not-call registry's "opt-in" regime, would not be as effective as the TCPA's blanket "opt-out" prohibition, because it would place a burden on the consumer to take an affirmative step to block unwanted calls. Pl.'s Am. Br. in Opp'n 13-14. However, this flies in the face of clear United States Supreme Court precedent which holds that such a burden cannot justify an over inclusive restriction on freedom of speech.

> It is no response that voluntary blocking requires a consumer to take action, or may be inconvenient, or may not go perfectly every time. A court should not assume a plausible, less restrictive alternative would be ineffective; and a court should not presume [consumers], given full information, will fail to act.[16]

Moreover, the Government has repeatedly defended the efficacy of the do-not-call regime and courts have repeatedly upheld it as a valid protection for residential privacy.[17] In sum, the do-not-call list is a narrowly tailored, constitutional alternative to the TCPA's blanket prohibition, an alternative that directly advances the government's interests—reducing intrusions upon consumer privacy and the risk of fraud or abuse—by restricting a substantial number (and also a

---

[13] *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1234 (10th Cir. 2004).
[14] *Mainstream Mktg. Servs., Inc.*, 358 F.3d at 1240.
[15] *Id.*
[16] *Playboy Entm't Grp.*, Inc., 529 U.S. at 823–24.
[17] *See, e.g., Mainstream Mktg. Servs., Inc.*, 358 F.3d at 1240; *see also Nat'l Fed'n of the Blind v. F.T.C.*, 420 F.3d 331, 342 (4th Cir. 2005).

substantial percentage) of the calls that cause these problems. The TCPA's failure to provide such an alternative is constitutionally fatal.

Plaintiff's final argument is that the Court should "sever" the government-debt exemption from the TCPA to render it content neutral and thus avoid a strict scrutiny analysis. Pl.'s Am. Br. in Opp'n 15-16. However, this would have the effect of restricting more rather than less speech. The Third Circuit has expressly forbidden such uses of the severability doctrine in the past.[18] Moreover, Plaintiff bases his entire severability argument on the wholly unsupported conjecture that Congress would prefer to have the TCPA's blanket prohibition in place even without the government-debt exemption.[19] Plaintiff points to almost nothing that would support his position and looks instead to the severability provision of the Communications Act of 1934. However, the ultimate determination of severability rarely turns on the presence or absence of a severability clause.[20] In fact, the Third Circuit has specifically refused to use the severability doctrine to further burden free speech despite the presence of a statutory severability provision with language almost identical that cited by the Plaintiff here.[21] Thus, the Plaintiff cannot use the severability doctrine to save the TCPA's clearly unconstitutional content-based restrictions on free speech.

---

[18] *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072–73 (3d Cir. 1994).
[19] The Plaintiff's argument also ignores the fact that, in order to truly make the TCPA's blanket prohibition content neutral, the Court would not only have to strike the "government debt" exemption, it would also have to strike the "emergency purposes" exemption, an exemption that has been included in the TCPA since its inception. *See* 47 U.S.C. § 227(b)(1)(A).
[20] *See United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968).
[21] *Rappa*, 18 F.3d at 1072–73. Moreover, the language of the Communications Act severability provisions does not support the Plaintiff's request. 47 U.S.C. § 608 provides as follows: "[i]f any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby…" However, in the instant situation, the Defendant is not asking the Court to remedy the invalid "application" of a provision of the Act to a particular class of "persons." It is objecting to the failure to apply the act in a content neutral manner to all relevant "persons." Because the language of 47 U.S.C. § 608 does not address the failure to "apply" the act, it is not relevant to this proceeding.

### III. Plaintiff's Brief Claims That Defendant Made "Thousands" of Calls to Individuals in Their Homes, But Plaintiff's Brief Fails to Provide *Any* Documentary Support for Such Baseless Assertions

In a transparent attempt to create sympathy for its position, Plaintiff's Brief claims that Defendant made "thousands" of unwanted calls to individuals at their homes.[22] However, Plaintiff's Brief fails to provide any documentary or evidentiary support for such assertions. The Plaintiff in this proceeding is an individual; the Plaintiff clearly is not "thousands" of individuals. Moreover, Plaintiff's Brief contains no documentation that Plaintiff was even in his home when the subject call took place, despite arguing that the purpose of the TCPA is to protect privacy in homes. In short, there is no evidentiary support for Plaintiff's baseless allegations against Defendant.

Second, Plaintiff's Brief misleadingly suggests that Plaintiff had no choice but to accept the subject call and listen to Defendant's representative "without consent".[23] In reality, the recording of Plaintiff's discussion in this case with the telemarketer who called him shows that he spoke voluntarily and willingly with the telemarketer for nearly eight minutes, long after learning that he was calling regarding Liberty Power's electric supply service.[24] In fact, Plaintiff agreed on that call to enter a contract with Liberty Power and accept its electric supply service.[25]

### IV. The Record Evidence Establishes That Further Likelihood of Harm is Unlikely after the One Misdial at Issue

Plaintiff's Brief in Opposition fails to contradict the record evidence that establishes Plaintiff is not at risk for future injurious telephone calls and thus Defendant's Motion to Dismiss should be granted. "When permanent injunctive relief is sought pursuant to statutory authority, courts typically consider only two factors: (1) whether there is an actual violation of the statute,

---

[22] Pl.'s Am. Br. in Opp'n 3, 7.
[23] *Id.*
[24] **Exhibit** C to Defendant's Motion to Dismiss.
[25] *Id.*

7

and (2) whether there is a likelihood of future violations." *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) (citing *Commodity Futures Trading Comm. v. British American Commodity Options Corp.*, 560 F.2d 135, 142 (2d Cir. 1977)).

First, Plaintiff has not disputed Defendant's facts or offered contradictory facts. Defendant's argument is supported by authenticated audio and sworn testimony establishing that this case involves the accidental transposing of one digit in a ten digit telephone number, thus resulting in a misdial. *See* **Exhibit A** to Def.'s Opening Br., MP3 #1, at 00:10-00:40 (incorrect telephone number verification by customer services agent exacerbated by language barrier); D.I. # 8-3, **Exhibit B**, Decl. of Gary Donaldson ¶ 5 (testifying Plaintiff's telephone number was a "warm lead," which indicates that the telephone number was presented as one where the call recipient had asked and agreed to be called at his number). Second, given the mistaken verification of the phone number at issue, this is not a voluntary compliance or voluntary cessation case; it is a one-time only accidental situation, making Plaintiff's citation to *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) inapplicable.[26] In fact, "Plaintiffs bear the burden of proving standing."[27] Plaintiff has not offered any additional fact to establish standing.

Contrary to Plaintiff's argument, Defendant never avers that Plaintiff has requested injunctive relief "solely for the purpose of obtaining jurisdiction." Pl.'s Am. Br. in Opp'n 18. Similarly, Defendant is not seeking to "have a litigation deemed moot" or moving to dismiss the

---

[26] Plaintiff cites to *Chao v. Shingara*, No. 4:04-cv-2805, 2005 WL 8144893, at *5 (M.D. Pa. Jan. 28, 2005) and *United States v. Stover*, 650 F.3d 1099, 1103 (8th Cir. 2011) for the point of law that "the TCPA does not require Plaintiff to plead or prove a likelihood of future harm to obtain an injunction." Pl.'s Am. Br. Opp'n 18. Neither of those cases involved the TCPA. Plaintiff has not addressed or refuted the litany of case law cited by Defendant in which Courts declined to issue injunctive relief absent the fundamental requisite of a likelihood of future harm. *See* Def.'s Opening Br. 14.

[27] *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003); *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975) ("If, after this opportunity [to amend the complaint or provide affidavits], the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.").

entire Complaint. *Id.* Defendant simply shows that Plaintiff has no standing to obtain injunctive relief under the TCPA. In addition, the argument that "Plaintiff's claim for injunctive relief is clearly not wholly insubstantial or frivolous" not only misses the point, but is again not supported by any facts or evidence: Plaintiff accidentally received one, misdirected telephone call due to the verification error by the initial customer services agent.[28]

Finally, the averment that "Plaintiff needs to conduct discovery to determine the circumstances under which Defendant called Plaintiff, and the effectiveness of any supposed safeguards that Defendant has allegedly implemented to make sure that Defendant will not make an illegal prerecorded telephone call to Plaintiff again" is specious and unsupported by any evidence or facts. Pl.'s Am. Br. in Opp'n 18. Defendant has established the facts and Plaintiff has offered nothing to challenge or contradict them. Thus, additional discovery is neither warranted nor could it provide any evidence establishing a likelihood that Plaintiff could suffer future harm.

Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: /s/ Peter Murphy
Peter Murphy (DE Id. # 5043)
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801
Telephone: 302-552-2906
Facsimile: 302-574-7401
Email: pmurphy@eckertseamans.com
*Co-Counsel for Defendant Liberty Power Corp., L.L.C.*

---

[28] *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 865 (3d Cir. 1977) is inapposite because it did not involve injunctive relief (and the likelihood of future harm) and instead afforded Plaintiff additional discovery into her EEOC lawsuit.

9

Charles A. Zdebski (of counsel)
Jeffrey P. Brundage (of counsel)

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

1717 Pennsylvania Avenue, N.W.
12th Floor
Washington, D.C.  20006
Telephone:  202-659-6676
Facsimile:  202-659-6699
Email: czdebski@eckertseamans.com
Email:  jbrundage@eckertseamans.com
*Co-Counsel for Defendant Liberty Power Corp., L.L.C.*