**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ANDREW R. PERRONG, on behalf of himself and all others similarly situated, | |
| *Plaintiffs*, | |
| v. | No. 1:18-cv-712-MN |
| LIBERTY POWER CORP., L.L.C., | |
| *Defendant*. | |

## UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT

DAVID C. WEISS
United States Attorney for the District of Delaware

CHAD A. READLER
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

ANJALI MOTGI
Trial Attorney (TX Bar No. 24092864)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel: (202) 305-0879
Fax: (202) 616-8470
Anjali.Motgi@usdoj.gov

Jennifer Hall (#5122)
Assistant United States Attorney
1313 N. Market St., Suite 400
Wilmington, DE 19899-2046
(302) 573-6277
jennifer.hall@usdoj.gov

Dated: October 26, 2018

*Counsel for the United States of America*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 2

SUMMARY OF THE ARGUMENT ...................................................................................... 4

ARGUMENT ......................................................................................................................... 5

   I.   The Court Should Resolve All Non-Constitutional Issues Before Addressing the TCPA's
       Constitutionality............................................................................................................ 5

   II.   *Reed* Does Not Undermine the Longstanding Conclusion that the TCPA is Constitutional.
       ................................................................................................................................... 6

   III.  The Government-Debt Exception Does Not Render the TCPA Content Based................ 9
      A.   Defendant Lacks Standing to Challenge the Government-Debt Exception. ............... 9
      B.   The Government-Debt Exception is Not Content or Viewpoint Based. ................... 11

   IV.  If the Court Finds the TCPA Content Based, It Should Conclude that the Statute Satisfies
       Strict Scrutiny. ........................................................................................................... 13
      A.   The TCPA Serves a Compelling Government Interest. ........................................... 14
      B.   The TCPA is Neither Over- Nor Under-Inclusive.................................................... 16
      C.   *Free Speech Coalition* Does Not Compel a Different Result.................................... 19

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**

*Allen v. Aytch*,
  535 F.2d 817 (3d Cir. 1976) .................................................................................... 6

*Am. Ass'n of Political Consultants v. Sessions*,
  323 F. Supp. 3d 737 (2018) ................................................................... 7, 14, 19, 20

*Brickman v. Facebook, Inc.*,
  230 F. Supp. 3d 1036 (N.D. Cal. 2017) .......................................................... *passim*

*Cahaly v. Larosa*,
  796 F.3d 399 (4th Cir. 2015) ............................................................................... 8, 9

*Carey v. Brown*,
  447 U.S. 455 (1980) ............................................................................................ 15

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) ........................................................................................ 14

*Citizens for Free Speech, LLC v. Cty. of Alameda*,
  114 F. Supp. 3d 952 (N.D. Cal. 2015) ................................................................... 8

*City of Los Angeles v. Alameda Books, Inc.*,
  535 U.S. 425 (2002) .............................................................................................. 9

*Clearfield Tr. Co. v. United States*,
  318 U.S. 363 (1943) ............................................................................................ 16

*Free Speech Coalition, Inc. v. Attorney General United States*,
  825 F.3d 149 (3d Cir. 2016) ................................................................................ 19

*Frisby v. Schultz*,
  487 U.S. 474 (1988) ............................................................................................ 15

*Gallion v. Charter Commc'ns Inc.*,
  287 F. Supp. 3d 920 (C.D. Cal. 2018),
  *appeal docketed*, No. 18-55667 (9th Cir. May 23, 2018) ............................ 7, 14, 15

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014),
  *aff'd on other grounds*, 136 S. Ct. 663 (2016), *as amended* (Feb. 9, 2016), ............... 1, 6, 7, 16

*Greenley v. LIUNA*,
  271 F. Supp. 3d 1128 (D. Minn. 2017) ................................................... 7, 12, 14, 15

*Gresham v. Swanson*,
  866 F.3d 853 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 682 (2018) .......................................... 10

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ................................................................................................................ 5

*Holt v. Facebook, Inc.*,
  240 F. Supp. 3d 1021 (N.D. Cal. 2017),
  *appeal docketed*, No. 17-80086 (9th Cir. May 12, 2017) .................................................... 7, 13

*Hutchinson v. Proxmire*,
  443 U.S. 111 (1979) ................................................................................................................ 5

*In re Extradition of Lang*,
  905 F. Supp. 1385 (C.D. Cal. 1995) ...................................................................................... 10

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  18 FCC Rcd. 14014 (2003) ...................................................................................................... 3

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  31 FCC Rcd. 9074 (2016) .................................................................................................. 11-12

*INS v. Chadha*,
  462 U.S. 919 (1983) ........................................................................................................ 10, 11

*Joffe v. Acacia Mortg. Corp.*,
  121 P.3d 831 (Ariz. Ct. App. 2005), *cert. denied*, 549 U.S. 1111 (2007) ................................ 2

*Maryland v. Universal Elections, Inc.*,
  729 F.3d 370 (4th Cir. 2013) .................................................................................................. 6

*Mejia v. Time Warner Cable, Inc.*,
  No. 15-cv-6445, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017)........................................ *passim*

*Mey v. Venture Data, LLC*,
  245 F. Supp. 3d 771 (N.D. W. Va. 2017) ...................................................................... 2, 6, 11

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012)........................................................................................................ 2, 20

*Moser v. FCC*,
  46 F.3d 970 (9th Cir. 1995) ............................................................................................ 6, 7, 15

*Norton v. City of Springfield*,
  806 F.3d 411 (7th Cir. 2015) .................................................................................................. 8

*Patriotic Veterans, Inc. v. Zoeller,*
  845 F.3d 303 (7th Cir. 2017), *cert. denied*, 137 S. Ct. 2321 (2017) .................................. *passim*

*Pleasant Grove City v. Summum,*
  555 U.S. 460 (2009) ......................................................................................................... 13

*Reed v. Town of Gilbert,*
  135 S. Ct. 2218 (2015) .................................................................................................. 1, 8

*Reno v. Am. Civil Liberties Union,*
  521 U.S. 844 (1997) ......................................................................................................... 17

*Rideout v. Gardner,*
  123 F. Supp. 3d 218 (D.N.H. 2015), *aff'd*, 838 F.3d 65 (1st Cir. 2016) .................................. 8

*Rosenberger v. Rector & Visitors of UVA,*
  515 U.S. 819 (1995) ......................................................................................................... 13

*Satterfield v. Simon & Schuster, Inc.,*
  569 F.3d 946 (9th Cir. 2009) ............................................................................................ 3

*Sliwa v. Bright House Networks, LLC,*
  No. 2:16-cv-235, 2018 WL 1531913 (M.D. Fla. Mar. 29, 2018) ............................................ 11

*United States v. Davis,*
  785 F.3d 498 (11th Cir. 2015) .......................................................................................... 14

*Valot v. Se. Local Sch. Dist. Bd. of Educ.,*
  107 F.3d 1220 (6th Cir. 1997) .......................................................................................... 16

*Van Bergen v. Minnesota,*
  59 F.3d 1541 (8th Cir. 1995) ........................................................................................ 1, 10

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989), *reh'g denied*, 492 U.S. 937 (1989)....................................................... 7

*Wollschlaeger v. Governor of Florida,*
  848 F.3d 1293 (11th Cir. 2017) .......................................................................................... 8

*Woods v. Santander Consumer USA Inc.,*
  No. 2:14-cv-02104-MHH, 2017 WL 1178003 (N.D. Ala. Mar. 30, 2017) ........................... 6, 10

*Wreyford v. Citizens for Transp. Mobility, Inc.,*
  957 F. Supp. 2d 1378 (N.D. Ga. 2013) ............................................................................... 6

## STATUTES

28 U.S.C. § 2403 ................................................................................................................ 4

47 U.S.C. § 227 ......................................................................................................... *passim*

Bipartisan Budget Act of 2015,
  Pub. L. No. 114-74, 129 Stat. 584 ............................................................................ 3

## LEGISLATIVE MATERIALS

137 Cong. Rec. 30,821 (1991) ........................................................................................ 2

S. Rep. No. 102-178 (1991) ............................................................................................ 8

## RULES

Fed. R. Civ. P. 5.1 ............................................................................................................ 4

## **INTRODUCTION**

Defendant Liberty Power Corp., L.L.C., has raised a facial First Amendment challenge to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").  As relevant here, § 227(b)(1)(A)(iii) of the TCPA prohibits the use of automated dialing systems ("ATDS") to make a call or send a text message to a cell phone user without the user's prior express consent, unless the call or message is initiated for an emergency purpose or to collect a debt owed to or guaranteed by the United States.  Plaintiff Andrew R. Perrong claims that Defendant violated the Act by calling Plaintiff's phone, without his consent and using an ATDS and a prerecorded or artificial voice.  In response, Defendant asks this Court to be the first to hold that the TCPA is a content-based regulation of speech that fails to survive strict scrutiny.

Every court to consider such a First Amendment challenge – including after the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and after the statute's central provision was amended in 2015 – has concluded that the statute is constitutional.  Indeed, another court of appeals recently concluded that prior decisions upholding the statute as a content-neutral, time-place-and-manner restriction that satisfies intermediate scrutiny were not undermined by *Reed.  See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 306 (7th Cir. 2017) (noting that "[f]ederal law severely limits unsolicited calls to cell phones, 47 U.S.C. § 227(b)(1)(A)(iii) . . . [and] ha[s] been sustained against constitutional challenge"), *cert. denied*, 137 S. Ct. 2321 (2017); *id.* at 304 (citing approvingly, *e.g.*, *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd on other grounds*, 136 S. Ct. 663 (2016), *as amended* (Feb. 9, 2016), and *Van Bergen v. Minnesota*, 59 F.3d 1541, 1594-56 (8th Cir. 1995)).  Similarly, no court has ever suggested, to the Government's knowledge, that § 227(b)(1)(A)(iii) of the TCPA is inconsistent with the equal protection principles of the Fifth Amendment.

If this Court were to conclude, contrary to the unanimity of judicial precedent, that the TCPA is content based – or treats different persons differently – and therefore that strict scrutiny ought to apply, it should nevertheless uphold the narrow statutory provision at issue here. Congress made extensive findings about the Act's purpose of protecting the privacy of unwilling listeners, an interest the Supreme Court has already acknowledged is compelling. Section 227(b)(1)(A)(iii) is narrowly tailored to protect that interest, prohibiting only the sorts of automated communications that Congress found most problematic – those made in the absence of consumer consent – and no more. As such, the TCPA survives even heightened scrutiny; every court that has determined that the TCPA is content based has held as much. Accordingly, Defendant's constitutional challenge should be rejected.

## NATURE AND STAGE OF THE PROCEEDINGS

"Voluminous consumer complaints about abuses of telephone technology — for example, computerized calls dispatched to private homes — prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). The ubiquity of cell phones only aggravates such problems. "People keep their cellular phones on their person at nearly all times: in pockets, purses, and attached to belts. Unlike other modes of communication, the telephone commands our instant attention." *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831, 842 (Ariz. Ct. App. 2005), *cert. denied*, 549 U.S. 1111 (2007) (mem.); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 781 (N.D. W. Va. 2017) ("When it enacted the TCPA, Congress repeatedly emphasized the nuisance aspect of robocalls, showing that it considered the interruptions that they cause and the time they cause consumers to waste to be one of the harms it sought to remedy. . . . 'They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed.'" (quoting 137 Cong. Rec. 30,821-30,822 (1991) (testimony of Senator Hollings))).

As pertinent here, the statute makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).  Congress added the final clause of this provision, the government-debt exception, in November 2015 as part of the Bipartisan Budget Act of 2015.  *See* Pub. L. No. 114-74, § 301, 129 Stat. 584, 588.  The statute has been interpreted to apply to both phone calls and text messages.  *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009).

Plaintiff brings this putative class action for damages under § 227(b)(1)(A)(iii) of the TCPA.  Mr. Perrong alleges that "Defendant, using an [ATDS], caused to be made at least one (1) call to Plaintiff on his Voice Over Internet Protocol ("VOIP") telephone using a prerecorded or artificial voice, without Plaintiff's prior express permission, to encourage him to purchase energy services from" Liberty Power.  *See* Compl. ¶ 2, D.I. 1.  Plaintiff alleges that he was charged for this call, *see id.*, in which a prerecorded or artificial voice told him that he could receive a discount on his energy bill if he "press[ed] 1 to speak to an account representative."  *See id.* ¶ 16.  Plaintiff alleges that, upon pressing "1," he learned that the caller was Defendant.  *Id.*  He further alleges that, in addition to the amount he was charged for this call, the unwanted call "tied up Plaintiff's telephone line, invaded Plaintiff's privacy and wasted Plaintiff's time."  *Id.* ¶ 19.  Plaintiff seeks to represent a class of persons within the United States who, within the four years prior to this

lawsuit, received a "call" from Defendant that was "identical or substantially similar to those that Defendant made to Plaintiff," and was charged for such call, without having consented to receipt of such a message.  *Id.*  ¶ 23.  According to Plaintiff, these calls made by Liberty Power using an ATDS constitute knowing and/or willful violations of the TCPA.  *Id.* ¶¶ 36-38.

Liberty Power has moved to dismiss the suit on both constitutional and non-constitutional grounds.  *See* D.I. 8-1 (Def.'s Mot. to Dismiss, hereinafter "Def. Mot.").  With respect to its First Amendment claim, Defendant contends that the recently added exception in the TCPA for calls to collect a debt owed to the United States (the "government-debt exception") is facially content based.  *See id.* at 6-8.  Liberty Power also argues that a content-based regulation of speech categorically violates the equal protection principles of the Fifth Amendment.  *Id.* at 3-4.  As a result, Defendant argues that the statute is subject to strict scrutiny, which it cannot survive because (1) "reducing congestion of phone lines and protecting residential privacy" are not compelling interests, and (2) the TCPA is not narrowly tailored in advancing those interests.  *See id.* at 8-11. Finally, Defendant asserts that other, recent district court decisions that have considered the TCPA and upheld it against First Amendment challenges have "[f]ailed to [f]ully [c]onsider the [d]iscriminatory [t]reatment of [p]rotected [s]peech."  *Id.* at 11.

The Court has not yet certified the constitutional question under 28 U.S.C. § 2403 and Federal Rule of Civil Procedure 5.1.  On August 27, 2018, the Court granted the Government's unopposed motion for an extension of time, and ordered that the United States decide whether to intervene by October 26, 2018.  *See* D.I. 19 (Aug. 27 Order).  The United States has filed a Notice of Intervention concurrently with this brief.

## SUMMARY OF THE ARGUMENT

1.      The Court should resolve all non-constitutional issues before addressing the First

4

and Fifth Amendment challenges to the TCPA.

2.      The TCPA is not a content-based restriction on speech.  Section 227(b)(1)(A)(iii) is distinct from the restrictions in *Reed*, and intermediate scrutiny, which the statute readily satisfies, therefore continues to be appropriate for this content-neutral restriction.

3.      The government-debt exception is a narrow, relationship-based carve out from an otherwise universally applicable prohibition and, as such, does not render the TCPA content-based; it is also consistent with the government's prerogative to subject its own speech to different restrictions and so does not render the statute viewpoint- or speaker-based.

4.      If the Court finds that the TCPA is content based, and therefore merits strict scrutiny, it should hold – as have six district courts in the last two years – that the statute satisfies the more exacting standard of review.  The statute is narrowly tailored to the compelling interest of protecting the privacy of consumers.

**ARGUMENT**

**I.      The Court Should Resolve All Non-Constitutional Issues Before Addressing the TCPA's Constitutionality.**

As an initial matter, this Court should not address the constitutionality of the TCPA until it resolves all other issues presented in Defendant's Motion to Dismiss.  "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) (citation omitted); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 122 (1979) ("Our practice is to avoid reaching constitutional questions if a dispositive nonconstitutional ground is available." (citation omitted)).

In addition to its constitutional challenge, Liberty Power raises a slate of other arguments in favor of dismissal.  Namely, it contends that Plaintiff does not have standing for permanent injunctive relief; that Plaintiff's TCPA claim is moot; and that the Court lacks subject matter

jurisdiction to hear Plaintiff's claim because there is no likelihood of future harm to Plaintiff.   *See*

Def. Mot. at 12-18.   To avoid unnecessary constitutional adjudication, the Court should first

address these issues before reaching Liberty Power's First Amendment and Fifth Amendment

contentions.[1]   *See Allen v. Aytch*, 535 F.2d 817, 819 (3d Cir. 1976) ("It is well established that

federal courts will not pass upon a constitutional question if the issue presented in a case may be

adjudicated on a nonconstitutional ground.").

## II.       *Reed* Does Not Undermine the Longstanding Conclusion that the TCPA is Constitutional.

Courts have long held that the TCPA is a content-neutral, time-place-and-manner

restriction on speech.   *See Patriotic Veterans*, 845 F.3d at 306 (collecting cases upholding the

TCPA's constitutionality under intermediate scrutiny and explaining that those decisions "have

not been called into question by *Reed*"); *Campbell-Ewald Co.*, 768 F.3d at 871 (holding that

§ 227(b)(1)(A)(iii) is a valid time-place-and-manner restriction); *Maryland v. Universal Elections,

Inc.*, 729 F.3d 370, 376-77 (4th Cir. 2013) ("The district court properly determined that the TCPA

is a content-neutral law to which intermediate scrutiny must be applied. . . . [It] furthers important

government interests . . . [and] the TCPA's restrictions do not burden substantially more speech

than is necessary to protect those interests."); *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995) (holding

that the TCPA is content neutral and survives intermediate scrutiny); *Mey*, 245 F. Supp. 3d at 792

(holding after *Reed* that "[t]he TCPA is a permissible content-neutral regulation on its face");

*Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380-82 (N.D. Ga. 2013)

(upholding § 227(b)(1)(A)(iii) as valid time, place, and manner restriction); *Woods v. Santander

Consumer USA Inc.*, No. 2:14-cv-02104-MHH, 2017 WL 1178003 (N.D. Ala. Mar. 30, 2017)

---

[1] The United States has intervened solely for the purpose of defending the constitutionality of the TCPA and therefore takes no position on the merits of these issues.

6

(same, after *Reed*).[2]

In *Moser*, for instance, the Ninth Circuit held that the statute is a content-neutral time, place, and manner restriction because it "regulates all automated telemarketing calls without regard to whether they are commercial or noncommercial." 46 F.3d at 973. Applying intermediate scrutiny, as directed by Supreme Court precedent, *see Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), *reh'g denied*, 492 U.S. 937 (1989), the Ninth Circuit held that, in light of the evidence before Congress at the time of its enactment, the statute was a valid response to the "unwarranted intrusion upon privacy" of telemarketers. *Moser*, 46 F.3d at 972. The court went on to conclude that the statute was not impermissibly under-inclusive. *Id.* at 974. Later, the Ninth Circuit reaffirmed this reasoning in *Campbell-Ewald*, recognizing that *Moser* had rightly treated the TCPA as a content-neutral time, place, and manner restriction, and determining that the Act serves a significant government interest in protecting privacy. *Campbell-Ewald*, 768 F.3d at 876-77. The *Campbell-Ewald* court also found § 227(b)(1)(A)(iii) to be narrowly tailored and to leave open ample alternative channels for the communication of information. *Id.* And nothing in *Reed* undermines the conclusion of the Ninth Circuit in these cases.

The lines drawn by the TCPA in no way resemble the lines drawn by the ordinance invalidated in *Reed*. The sign code at issue in *Reed* purported to impose general limits on the

---

[2] Six courts have determined the TCPA is content based, after *Reed* and as amended in 2015, but each has upheld the statute under strict scrutiny. *See Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017) (finding strict scrutiny applies after *Reed*, but TCPA, as amended in 2015, satisfies that standard), *appeal docketed*, No. 17-80080 (9th Cir. May 9, 2017); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017) (same), *appeal docketed*, No. 17-80086 (9th Cir. May 12, 2017); *Mejia v. Time Warner Cable, Inc.*, No. 15-cv-6445, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) (same), *denying mot. to certify interlocutory appeal*, 2017 WL 5513638 (S.D.N.Y. Nov. 17, 2017); *Greenley v. LIUNA*, 271 F. Supp. 3d 1128 (D. Minn. 2017) (same); *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920 (C.D. Cal. 2018), *appeal docketed*, No. 18-55667 (9th Cir. May 23, 2018); *Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d 737 (2018) (same), *appeal docketed*, No. 18-1588 (4th Cir. May 24, 2018).

display of outdoor signs, but was in fact riddled with twenty-three different exemptions. *Reed*, 135 S. Ct. at 2224. It aimed to maintain the town's aesthetic appeal and to promote traffic safety, *id.* at 2231, but it distinguished between signs (political, ideological, etc.) that seemed equally likely to detract from the town's beauty or add to its traffic, *see, e.g.*, *id.* at 2231-32. The Supreme Court therefore concluded that the ordinance was content based and could not survive strict scrutiny. The TCPA, by contrast, contains a universally applicable restriction with a narrow, relationship-based exception. Congress enacted the TCPA "to protect the privacy interests of residential telephone subscribers." S. Rep. No. 102-178, at 1 (1991). As a result, as relevant here, the Act prohibits one narrow category of calls and text messages to wireless numbers – *viz.*, those made using an ATDS or an artificial or pre-recorded voice and directed at someone who has not consented to receive the calls. 47 U.S.C. § 227(b)(1)(B). The statute does not differentiate among calls depending on whether they are ideological, political, or commercial in nature. *Id.* § 227(b)(1)(A)(iii). And, in any event, *Reed* did not purport to overrule existing precedent or radically alter First Amendment jurisprudence, as courts of appeals have recognized. *See, e.g.*, *Patriotic Veterans*, 845 F.3d at 306; *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1308 (11th Cir. 2017) ("Content-based restrictions on speech normally trigger strict scrutiny." (citing *Reed* and its predecessors)).[3]

---

[3] Nor do post-*Reed* decisions require a different approach. To be sure, a handful of courts have used *Reed* to invalidate or enjoin enforcement of various statutes. *See, e.g.*, *Cahaly v. Larosa*, 796 F.3d 399, 402 (4th Cir. 2015); *Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015) (panhandling ordinance); *Rideout v. Gardner*, 123 F. Supp. 3d 218 (D.N.H. 2015) (New Hampshire statute that prohibited photographing marked ballots), *aff'd*, 838 F.3d 65 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 1435 (2017). *But see Citizens for Free Speech, LLC v. Cty. of Alameda*, 114 F. Supp. 3d 952, 969 (N.D. Cal. 2015) (suggesting *Reed*'s application is limited to ordinances that impose "temporal or geographic restrictions on different categories of . . . signs"). For the reasons set forth above, the TCPA context is distinct. Indeed, the TCPA and the statute at issue in *Cahaly* bear little resemblance to one another, for the latter "prohibit[ed] only those robocalls that [we]re 'for the purpose of making an unsolicited consumer telephone call' or [we]re

Notwithstanding the unanimity of precedent finding the statute constitutional, Defendant argues that the TCPA is a content-based restriction on speech that must be subjected to – and ultimately does not satisfy – strict scrutiny.  Liberty Power purports to walk the Court through the impact of *Reed* on content-based regulations on speech, *see* Def. Mot. at 4-6, but ultimately recognizes, as it must, that *Reed* did not change the fact that content-based regulations on speech are constitutional if they satisfy strict scrutiny.  Citing the TCPA's exception for calls "made solely to collect a debt owed to or guaranteed by the United States," 47 U.S.C. § 227(b)(1)(A)(iii), Defendant then asserts, with little analysis, *see* Def. Mot. at 6-8, that the statute must be considered content based after *Reed*.  For the reasons that follow, however, Defendant's contention that strict scrutiny should apply to the TCPA is meritless.

### III.      The Government-Debt Exception Does Not Render the TCPA Content Based.

Defendant relies entirely on § 227(b)(1)(A)(iii)'s exception for calls "made solely to collect a debt owed to or guaranteed by the United States" to establish that the TCPA is content based.  Liberty Power, however, lacks standing to challenge the exception, which, in any event, is not content based.

### A.      Defendant Lacks Standing to Challenge the Government-Debt Exception.

This Court lacks jurisdiction over a challenge to the government-debt exception in this case because its invalidation would have no effect on the parties here, who are neither benefitted nor burdened by that exception.  If the government-debt exception were held unconstitutional, the remedy would be to strike the offending exception – a 2015 amendment to a statute enacted in

---

'of a political nature including, but not limited to, calls relating to political campaigns.'"  796 F.3d at 402 (quoting S.C. Code Ann. § 16-17-446(A)).  So it too "raise[d] the specter of impermissible content discrimination," *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 449 (2002), in a manner quite unlike the TCPA.

1991 – not to invalidate the entirety of the TCPA.  *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 931-32 (1983) ("[T]he invalid portions of a statute are to be severed 'unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'" (citation omitted)); *Woods*, 2017 WL 1178003, at *3 n.6 ("Here, there is no evidence that Congress would not have enacted the TCPA without the exception for government debt.  To the contrary, Congress did enact the TCPA without the exception for government debt, and the version of the TCPA without the exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country." (citations omitted)).

In other words, because the 2015 amendment is indisputably severable, Defendant's injuries would not be redressed even if the Court were to declare it unconstitutional.  *See, e.g.*, *In re Extradition of Lang*, 905 F. Supp. 1385, 1399 (C.D. Cal. 1995) ("[R]edressability cannot be shown here because the unconstitutional portion of the extradition statute can be severed from the remainder.").  Other circuits have adopted this approach to severable exceptions when considering state statutes similar to the TCPA.  *See, e.g.*, *Gresham v. Swanson*, 866 F.3d 853, 854 (8th Cir. 2017) (declining to consider severable content-based exception in determining constitutionality of state-law TCPA analog), *cert. denied*, 138 S. Ct. 682 (2018); *Patriotic Veterans*, 845 F.3d at 305 ("Potential problems with how [the exemption in] subsection (a)(3) affects other persons do not give plaintiff standing to complain about [the general prohibition on autodialed calls in] subsection (b), its target in this suit."); *Van Bergen*, 59 F.3d at 1551 ("Even assuming, without deciding," that the exception is content based, if "it does not apply to [the party challenging the statute, it] is not before the court in this case.").  These state laws, like the TCPA, contain narrow carve-outs from the statutes' otherwise universally applicable restrictions.  Following the approach of these courts of appeals, Defendant cannot challenge the government-debt exception, the invalidation of which

would have no effect on their liability under the TCPA's universally applicable, content-neutral restriction.[4]

### B.      The Government-Debt Exception is Not Content or Viewpoint Based.

Even if the Court finds that it may consider the constitutionality of the government-debt exception in this case, that exception does not undermine the conclusion that the TCPA is a valid time-place-and-manner restriction.  This is because the exception is relationship based, rather than content based:  It turns not on what the caller proposes to say, but on the relation between the caller (*i.e.*, the owner or servicer of the debt) and the recipient (*i.e.*, the person responsible for paying that debt).  *See Mey*, 245 F. Supp. 3d at 792 (holding that government-debt exception to the TCPA is based on the relationship between the speaker and the recipient, not the content of the message).  Debt collection, by its very nature, is limited to communications with those who have a legal relationship to the debt.  Indeed, when promulgating implementing rules for this exception, the FCC clarified that for a call to be made "solely to collect" a government-backed debt, it must "be made to the debtor or another person or entity legally responsible for paying the debt."  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (hereinafter "FCC 2016 Order"),

---

[4] Two courts have held that a TCPA defendant whose liability would not be affected by a holding that the government-debt exception is unconstitutional, nevertheless has standing to challenge it.  *See Mejia*, 2017 WL 3278926, at *12-13; *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2018 WL 1531913, at *3-5 (M.D. Fla. Mar. 29, 2018), *mot. to certify appeal denied*, 2018 WL 2296779 (M.D. Fla. May 21, 2018).  The United States respectfully submits, however, that both courts incorrectly concluded that severability "is not a threshold issue implicating a party's standing to challenge constitutionality in the first instance."  *Mejia*, 2017 WL 3278926, at *13 (citation omitted).  *See, e.g.*, *Chadha*, 462 U.S. at 931 n.7.  The court in *Sliwa*, in any event, went on to reject Defendant's constitutional challenge precisely and solely because of the severability of the government-debt exception.  *See Sliwa*, 2018 WL 1531913, at *5 (explaining that "a finding that Section 227(b)(1)(A)(iii) draws a content-based distinction that cannot survive strict scrutiny" would not allow defendant "to avoid liability under the anti-robocall provision" because "the 'offending clause'—the Government-Debt Exception—would be severed from the statute, and the remainder of the statute would still expose [Defendant] to liability").  Under the *Sliwa* court's reasoning, then, Defendant's constitutional challenges should be rejected on the merits due to severability.

31 FCC Rcd. 9074, 9083 (2016).[5]

Multiple courts of appeals have held that relationship-based exceptions to content-neutral restrictions on speech do not render those restrictions content based. *See Patriotic Veterans*, 845 F.3d at 304-05 (exceptions to Indiana anti-robocall statute, including for "[m]essages from school districts to students, parents, or employees," were not content based because they "depend on the relation between the caller and the recipient, not on what the caller proposes to say"); *Van Bergen*, 59 F. 3d at 1550 (state anti-robocall statute with "central provision" that "applies to all callers, with three exceptions . . . based on relationship rather than content" was not content based). Like the exceptions in *Van Bergen* and *Patriotic Veterans*, the government-debt exception is a relationship-based carve-out from a content-neutral restriction, and therefore does not render the TCPA content based.

Furthermore, the government-debt exception is in line with well-accepted distinctions between government and private speech. The government frequently subjects its own conduct or speech to different requirements than those applicable to private actors, and such provisions have never been thought to raise First Amendment concerns. *See Gomez*, 136 S. Ct. at 672-74 (discussing governmental immunity under TCPA). There is no doubt that the TCPA does not apply to the government itself, *see id.* at 672 ("The United States and its agencies, it is undisputed, are not subject to the TCPA's prohibitions because no statute lifts their immunity."), and the

---

[5] The court in *Brickman* – the first to conclude that the TCPA is content based – determined, without much analysis, that the government-debt exception makes no explicit reference to the relationship of the parties and therefore is a content- rather than relationship-based exception. *See* 230 F. Supp. 3d at 1045. However, that court failed to consider that the statutory phrase "solely to collect a debt," 47 U.S.C. § 227(b)(1)(A)(iii), necessarily implies that relationship. Even courts like the *Greenley* court, which ultimately found that the TCPA is content based, nevertheless acknowledged that the government-debt exception "in one sense . . . *is* relationship based—it arises from [the] creditor-debtor relationship between the government and the recipient of the communication." 2017 WL 4180159, at *12.

exception simply acts to protect those who are collecting debts that the government could undoubtedly collect in the same manner itself without running afoul of the First Amendment. *See Brickman*, 230 F. Supp. 3d at 1047 ("[T]he government-debt exception to the TCPA does not present a First Amendment problem because it merely carves out an exception for something the federal government is already entitled to do, and government speech is exempt from First Amendment scrutiny." (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009))).

Defendant is also incorrect in suggesting that the government-debt exception discriminates based upon viewpoint because it "allows telephone calls carrying a government-favored message." *See* Def. Mot. at 10. Viewpoint discrimination occurs when the application of the provision turns on "the specific motivating ideology or the opinion or perspective of the speaker. . . ." *Rosenberger v. Rector & Visitors of UVA*, 515 U.S. 819, 829 (1995). Here, the called party either legally owes a debt to the caller – a representative of the government or a purchaser of government debt – or (s)he does not; no opinion, ideology, or perspective is involved in determining whether the caller and the called party are related in this way. Nor is the government "favored" by this relationship. If anything, the "solely to collect" language simply makes explicit the implied relationship between the caller and the called party at issue in the government-debt exception. And the TCPA does not suppress *any* speech whatsoever; rather, it simply requires that a caller secure the consent of the called party before employing ATDS technology to place a call or message.

## IV.     If the Court Finds the TCPA Content Based, It Should Conclude that the Statute Satisfies Strict Scrutiny.

Even if this Court decides that the TCPA is content based, it should nevertheless uphold the statute under strict scrutiny. All six courts that have found the TCPA content based after *Reed* have agreed that the TCPA satisfies even that exacting standard of review. *See Brickman*, 230 F. Supp. 3d at 1045-49; *Holt*, 240 F. Supp. 3d at 1033; *Mejia*, 2017 WL 3278926, at *17; *Greenley*

*v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1151 (D. Minn. 2017); *Gallion*, 287 F. Supp. 3d at 931; *Am. Ass'n of Political Consultants*, 323 F. Supp. 3d at 744-47. This Court should not be the first to hold that the TCPA is unconstitutional.

### A.     The TCPA Serves a Compelling Government Interest.

Defendant contends that the TCPA does not serve a compelling interest because "reducing [the] congestion of phone lines" is not a compelling state interest, and because the Eleventh Circuit has held that cell phones merit lesser privacy protections than do residential phone lines, and so cannot form the basis of a compelling state interest. *See* Def. Mot. at 8-9 (asserting that these are the two goals Congress emphasized in enacting the TCPA).

As to the first argument, the Government does not contend that phone-line congestion alone constitutes a compelling interest for purposes of the strict scrutiny analysis, but rather that consumers' personal and residential privacy – which is injured through unwanted calls to both landlines and mobile telephone lines – is the well-recognized and compelling state interest served by the TCPA. In any event, the out-of-circuit precedent on which Defendant relies for the proposition that cell phones merit less privacy protections, *United States v. Davis*, 785 F.3d 498, 518 (11th Cir. 2015), was recently overruled by the Supreme Court. *See Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) (holding, contrary to *Davis*, that the Government's "acquisition of the [Defendant's] cell-site records was a search within the meaning of the Fourth Amendment"). In arriving at a holding abrogating *Davis*, the Supreme Court relied heavily on "the unique nature" of cell phones in the present day, *id.*, noting that "[t]here are 396 million cell phone service accounts in the United States—for a Nation of 326 million people," and that "[c]ell phones perform [a] wide and growing variety of functions," *id.* at 2211. After this recent pronouncement (albeit in the context of the Fourth Amendment), it is far from clear that cell phones implicate privacy concerns to a lesser degree than do residential telephones.

As for Defendant's second argument, there is no doubt that the government has a compelling interest in protecting personal and residential privacy. *See, e.g.*, *Carey v. Brown*, 447 U.S. 455, 471 (1980) (government's interest "in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society"); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) ("One important aspect of residential privacy is the protection of the unwilling listener."). And it is almost as well settled, by now, that the protections afforded for residential privacy extend to the cell phone, as well. *See, e.g.*, *Patriotic Veterans*, 845 F.3d at 305-06 ("No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cell-phone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) in other ways.").

Every court to consider the TCPA, including its 2015 amendment, has concluded that it serves a compelling interest. *See, e.g.*, *Brickman*, 230 F. Supp. 3d at 1046 ("[T]he Court holds the TCPA [as amended] serves a compelling government interest in promoting residential privacy."); *Mejia*, 2017 WL 3278926, at *16 (compelling government interest in protecting residential privacy "also extend[s] to cell phones"); *Greenley*, 271 F. Supp. 3d at 1150 ("That this" – protecting residential privacy – "is a compelling interest is well-established. . . ."); *Gallion*, 287 F. Supp. 3d at 928 ("The Court agrees with plaintiff, the government, and the consensus view among district courts that the TCPA serves a compelling government interest in protecting residential privacy from the nuisance of unsolicited, automated telephone calls." (citations omitted)); *see also Moser*, 46 F.3d at 972 (noting that, following extensive hearings, Congress "concluded that telemarketing calls to homes constituted an unwarranted intrusion upon privacy"). None of these courts

suggested, as Defendant does, that the TCPA's application to mobile phones in any way diminishes the compelling interest the statute serves.  *See Campbell-Ewald Co.*, 768 F.3d at 876-77 ("[T]here is no evidence that the government's interest in privacy ends at home . . . [and] to whatever extent the government's significant interest lies exclusively in residential privacy, the nature of cell phones renders the restriction of unsolicited text messaging all the more necessary to ensure that privacy.  After all, it seems safe to assume that most cellular users have their phones with them when they are at home. . . .  [I]n many households a cell phone *is* the home phone . . . [so] prohibiting automated calls to land lines alone would not adequately safeguard the stipulated interest in residential privacy.").  These courts have recognized, in the context of the TCPA, that the recipient of an unwanted message using an artificial or prerecorded voice, or an ATDS, on a cell phone is no less "a 'captive' audience," Def. Mot. at 9, than an individual receiving such a call on a landline.  Accordingly, there is no reason for the Court to break with the unanimity of precedent holding, unambiguously, that the TCPA serves a compelling government interest.[6]

### B.    The TCPA is Neither Over- Nor Under-Inclusive.

Liberty Power contends that § 227(b)(1)(A)(iii) is not narrowly tailored because it is both over- and under-inclusive.  Defendant does not disagree that the TCPA's broad prohibition on non-consensual autodialed or prerecorded calls is narrowly tailored; nor could it, for that provision

---

[6] Furthermore, the statute's narrow carve-out for government debt also serves a compelling interest.  In providing an exception for entities acting to recover funds guaranteed by the United States, the provision serves the government's compelling interest in protecting the public fisc.  *See Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1227 (6th Cir. 1997) ("Protecting the public fisc ranks high among the aims of any legitimate government."), *reh'g denied* (Apr. 18, 1997).  As the *Mejia* court explained, "the federal government's interest in collecting debts owed to it supports the finding of a particularly compelling interest in exempting calls made for the purposes of collecting government debts."  2017 WL 3278926, at *16 (citing *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 366 (1943)).  Thus, § 227(b)(1)(A)(iii) serves the compelling interest of protecting the unwilling listener's privacy, while at the same time protecting the public fisc, via the government-debt exception.

restricts a limited method of communication, and only without the consent of the called party, making it closely drawn to the unwanted intrusions it aims to prevent.  Instead, Defendant argues that the statute is over-inclusive, because "[s]peakers that are affiliated with or acting on behalf of the federal government . . . are favored under the TCPA over private parties."  Def. Mot. at 9.  But such a contention goes to whether the statute is content based and therefore must be examined under strict scrutiny, not whether the statute satisfies that level of review.  Liberty Power does not argue, for example, that the allegedly disfavored "private parties" include speakers whose messages do not implicate the privacy concerns that motivated the TCPA's enactment. Defendant's argument therefore does not establish that the TCPA is over-inclusive.

Defendant does assert, in passing, that the statute is also over-inclusive because less-restrictive alternatives exist.  Of course, less restrictive alternatives must "be *at least as effective* in achieving the legitimate purpose that the statute was enacted to serve."  *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997) (emphasis added).  Defendant suggests that Congress could have adopted other less-restrictive alternatives such as "permitting third parties to opt out of communications they do not want[] rather than requiring them to opt in to ones they do want to receive."  Def. Mot. at 10 (citation omitted).  Yet asking callers to opt out rather than opt in to receiving calls made using an ATDS or pre-recorded voice would undoubtedly be less effective at protecting called parties from unwanted calls than the TCPA.  *See, e.g.*, *Brickman*, 230 F. Supp. 3d at 1048-49 ("[P]lacing the burden on consumers to opt-out of intrusive calls, rather than requiring consumers to opt-in, would obviously not be as effective in achieving residential privacy.").  This is, at a minimum, because called parties would need to receive a non-consensual ATDS call or prerecorded message first before recognizing the need to opt out, meaning that the alternative, unlike the TCPA, does not protect consumers from the initial intrusion of an unwanted

robocall.  Further, an opt-out alternative already existed at the time the TCPA was enacted: the do-not-call list.  Yet both Congress and subsequent courts have deemed the do-not-call registry less effective than the TCPA.  *See id.* at 1048-49.

Finally, Defendant contends that the statute is under-inclusive because it "allow[]s unlimited numbers of calls from parties that are seeking to collect debts," and such calls "create the same problem" as do calls prohibited by the TCPA without prior consent, like "business communications."  Def. Mot. at 10.  But Defendant's argument ignores the fact that the exception is cabined by the statute's express grant of authority to the FCC to "restrict or limit the number and duration of calls made . . . to collect a debt owed to or guaranteed by the United States."  *See* 47 U.S.C. § 227(b)(2)(H); *Mejia*, 2017 WL 3278926, at *17.  At the same time, the exception is also "limited by the fact that such calls would only be made to those who owe a debt to the federal government."  *Brickman*, 230 F. Supp. 3d at 1047.  The government-debt exception is a minor carve-out from the otherwise sweeping prohibition applicable to all other speakers and messages, without regard to content; it therefore does not render § 227(b)(1)(A)(iii) under-inclusive.

Moreover, Defendant's contention misunderstands the nature of the privacy interest at stake.  It is not the content of the message that causes it to be intrusive but rather its manner of dissemination — via robocall technology to someone who has not consented to receive such messages.  Should a person desire to receive communications from particular businesses, they are welcome to opt into programs that use robocall technology to disseminate such messages; alternatively, a company remains free to communicate the same message through a non-automated call.  *Cf. Patriotic Veterans*, 845 F.3d at 306.  The facts of this case demonstrate the TCPA's appropriate sweep:  A Liberty Power customer may want to receive autodialed calls from Defendant about energy savings, while a customer of a different power company would likely find

such calls to be a nuisance.  The TCPA allows the former to consent to receiving messages from Defendant while protecting the latter from unwanted intrusion.

### C.   *Free Speech Coalition* **Does Not Compel a Different Result.**

At the close of its constitutional challenge to the TCPA, Defendant urges the Court to conclude that the many "[o]ther [c]ourt [d]ecisions that [h]ave [c]onsidered the TCPA" and upheld it against similar – or identical – constitutional challenges "failed to fully consider the discriminatory treatment of protected speech." Def. Mot. at 11.  In so doing, Liberty Power relies in large part on the Third Circuit's decision in *Free Speech Coalition, Inc. v. Attorney General United States*, 825 F.3d 149, 160 (3d Cir. 2016).  But that case merely affirmed *Reed*'s holding that a valid government purpose does not save a content-based speech restriction from being subjected to strict scrutiny, and therefore provides no basis to break with the unanimity of precedent upholding the TCPA as constitutional under the First Amendment.

In *Free Speech Coalition*, the Third Circuit reversed its prior decision that statutory provisions governing proof-of-age requirements for pornographic images were content neutral because they served a valid speech-related end.  825 F.3d at 164.  After *Reed*, the Third Circuit determined that the legitimacy or neutrality of the purpose of a restriction on speech did not bear on the question whether it is content based and thus merits strict scrutiny.  *Id.*  The Third Circuit remanded the case to the district court to determine whether the statute survived strict scrutiny. The *Free Speech* opinion thus does not undermine the strict scrutiny analysis of other district courts in recent opinions sustaining the constitutionality of the TCPA.  *See id.* ("Nothing in our analysis dictates a conclusion that the Statutes will not (or will) pass strict scrutiny.").

Lastly, Liberty Power suggests that *American Association of Political Consultants v.*

*Sessions*, 323 F. Supp. 3d 737, 739-40 (2018),[7] "failed to correctly apply the strict scrutiny test" to the TCPA because it did not "fully consider[] the competing compelling interests that corporations have in using the telephone, an efficient form of communication, to reach potential customers." Def. Mot. at 11. But the court there did not address competing interests because it instead canvassed the myriad cases finding the TCPA's motivating interests compelling, agreeing with the persuasive reasoning of those cases. *See Am. Ass'n of Political Consultants*, 323 F. Supp. 3d at 743-44 ("[T]he Supreme Court has reviewed and upheld Congress's extensive findings that 'automated or prerecorded telephone calls made to private residences . . . were rightly regarded by recipients as an invasion of privacy.'" (citing *Mims*, 565 U.S. at 372)). Defendant does not contest the Supreme Court's assessment that privacy is a value "of the highest order," particularly as it relates to the "unwilling listener," or that the court in *American Association of Political Consultants* was wrong to follow that assessment. *Id.* at 744.

In any event, the TCPA restricts *only* the use of ATDS technology to called parties who have not consented to receipt of such calls. Those customers who find ATDS calls or artificial and prerecorded messages to be "an efficient form of communication" may therefore always choose, consistent with the TCPA, to receive such calls. As such, the limited scope of § 227(b)(1)(A)(iii) reflects Congress's careful consideration of competing interests. For this reason, no court has concluded that the TCPA does not serve a compelling interest.

## CONCLUSION

For the foregoing reasons, the United States respectfully urges that the Court uphold the constitutionality of § 227(b)(1)(A)(iii) of the TCPA.

---

[7] *Am. Ass'n of Political Consultants* is currently on appeal to the Fourth Circuit. *See Am. Ass'n of Political Consultants v. Sessions*, No. 18-1588 (4th Cir. filed May 24, 2018). The appeal is fully briefed and awaiting argument and/or decision.

Respectfully submitted,

Dated: October 26, 2018

DAVID C. WEISS
United States Attorney for the District of Delaware

CHAD A. READLER
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

ANJALI MOTGI
Trial Attorney (TX Bar No. 24092864)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel: (202) 305-0879
Fax: (202) 616-8470
Anjali.Motgi@usdoj.gov

/s/ *Jennifer Hall*
Jennifer Hall (#5122)
Assistant United States Attorney
1313 N. Market St., Suite 400
Wilmington, DE 19899-2046
(302) 573-6277
jennifer.hall@usdoj.gov

*Counsel for the United States of America*