# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ANDREW R. PERRONG,<br>on behalf of himself and<br>all other similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY POWER CORP, L.L.C.,<br><br>    Defendant. | Case No. 1:18-cv-000712-MN<br><br>CLASS ACTION |

**DEFENDANT LIBERTY POWER CORP, L.L.C.'S REPLY MEMORANDUM OF LAW IN RESPONSE TO THE UNITED STATES' BRIEF IN INTERVENTION**

Peter Murphy (DE Id. # 5043)
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801
Telephone: 302-552-2906
Facsimile: 302-574-7401
Email: pmurphy@eckertseamans.com
*Counsel for Defendant Liberty Power Corp., L.L.C.*

November 14, 2018

# TABLE OF CONTENTS

I.   Introduction……………..…………………………………………………………...…….1

II.  The TCPA is a Content-Based Statute That Must Be Reviewed Under the Strict Scrutiny Test……………………………………………………………………..……..3

III. The TCPA Does Not Survive Review under the Strict Scrutiny Test..……...……6

IV.  Defendant has Standing to Assert a Constitutional Challenge to the TCPA…..10

# **TABLE OF AUTHORITIES**

**Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018)................................ 7
*Am. Ass'n of Political Consultants, Inc. v. Sessions*, No. 5:16-CV-252-D, 2017 WL 1025808, at
  *2 (E.D.N.C. Mar. 15, 2017) .............................................................................................. 11
*Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227 (1987) ............................................. 10
*Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) .................................. 2
*Brickman v. Facebook, Inc.*, No. 16-CV-00751- TEH, 2017 WL 1508719, at *3-4 (N.D. Cal.
  Apr. 27, 2017) ....................................................................................................................... 3
*Brickman*, 230 F. Supp. 3d at 1045........................................................................................... 5
*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 800 (2011)......................................................... 2
*Burson v. Freeman,* 504 U.S. 191, 211 (1992) .......................................................................... 2
*Carey v. Brown*, 447 U.S. 455, 470 (1980)................................................................................ 6
*Chafin v. Chafin*, 568 U.S. 165, 175 (2013) ............................................................................ 10
*City of Boerne v. Flores*, 521 U.S. 507, 534 (1997) .................................................................. 1
*Citizens United v. Fed Election Comm'n*, 558 U.S. 310, 340 (2010)........................................... 6
*Cooper v. Dillon*, 403 F.3d 1208, 1218 (11th Cir. 2005) ............................................................ 7
*Dimmitt v. Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) ................................................... 5
*Discovery Network, Inc.*, 507 U.S. 410, 429 (1993).................................................................. 1
*Edenfield v. Fane*, 507 U.S. 761, 770-771 (1993) ..................................................................... 2
*FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984).......................................... 5
*Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 174 (3d Cir. 2016) .......... 4
*Greater New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173, 183 (1999)......... 2
*Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1148 (D. Minn. 2017) .... 5, 6
*Holt v. Facebook, Inc.*, No. 16-CV-02266-JST (N.D. Cal. May 2, 2017) ..................................... 3
*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG02-
  278, 2016 WL 4158735, at *7–8 (Aug. 4, 2016)..................................................................... 5
*IMS Health Inc. v. Sorrell*, 630 F.3d 263, 278 (2d Cir. 2010), *aff'd,* 564 U.S. 552 (2011)............ 7
*Nat'l Coal. of Prayer, Inc. v. Carter*, 455 F.3d 783, 789–90 (7th Cir. 2006)................................ 7
*Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996) ................................................................ 7
*Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1242–43, 1246 (10th Cir. 2004) ........... 7
*Martin v. City of Struthers, Ohio*, 319 U.S. 141, 147–49 (1943) ................................................ 7
*McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014) ................................................................. 5
*Mejia v. Time Warner Cable Inc.*, No. 1:15-CV-06445-JPO, 2017 WL 3278926, at *13
  (S.D.N.Y. Aug. 1, 2017) ................................................................................................. 4, 11
*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 211 (5th Cir. 2011) .................. 10
*Orr v. Orr*, 440 U.S. 268, 272 (1979) ..................................................................................... 11
*Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 306 (7th Cir. 2017)......................................... 3
*Pienta v. Vill. of Schaumburg, Ill.*, 710 F.2d 1258, 1260 (7th Cir. 1983)..................................... 7
*Pine v. City of W. Palm Beach*, 762 F.3d 1262, 1269 (11th Cir. 2014)........................................ 7
*Playboy Entm't Grp., Inc.*, 529 U.S. at 816............................................................................... 3
*R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992)............................................................................ 2
*Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072–73 (3d Cir. 1994) .......................................... 3, 9

*Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015)..........................................................Passim
*Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 879 (1997) ............................................... 2
*Rowan v. United States Post Office*, 397 U.S. 728 at 737-738 (1970) ................................... 7
*Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 n.21 (2017).......................................... 10
*Silwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2018 WL 1531913, at *3-5 (M.D. Fla. Mar. 29, 2018)................................................................................................................... 11
*Solantic*, 410 F.3d at 1266 ....................................................................................................... 5
*Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1252 (11th Cir. 2005 ............................ 5
*United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 966 (9th Cir. 2008) .................................................................................................................................. 5
*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816–17 (2000) ............................... 2, 7
*United States v. Stevens*, 533 F.3d 218, 232 (3d Cir. 2008) ..................................................... 6
*Victory Processing, LLC v. Michael*, No. 17-CV-109-ABJ, 2018 WL 4204349 (D. Wyo. Aug. 6, 2018) ................................................................................................................................. 7
*Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1314 (11th Cir. 2017) ................................... 7
*Women Strike for Peace v. Morton, 472 F.2d 1273, 1293 (D.C. Cir. 1972)* ............................. 5
*Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1265 (11th Cir. 2015)..................... 10

**Statutes**

15 U.S. Code § 6101 .................................................................................................................. 7
47 U.S.C. § 227(b)(1)(A)(iii)............................................................................................... 1, 3, 4
47 U.S.C. § 227(b)(1)(A), (B)................................................................................................... 5

Defendant Liberty Power Corp, L.L.C. ("Defendant" or "Liberty Power"), by counsel, files this Reply in support of its motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted (D.I. 8) and to respond to the United States of America's Brief in Support of the Constitutionality of the Telephone Consumer Protection Act (D.I. 23). In response thereto, Defendant states as follows.

## I. Introduction

The Government has failed to meet its burden to justify the restrictions on speech found in Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"). The Government dedicates the majority of its brief defending the notions that the TCPA is content neutral and should somehow be shielded from scrutiny. To its credit, the Government does acknowledge that six district court judges have already held that Section 227(b)(1)(A)(iii) is a content-based restriction and subject to strict scrutiny. D.I. 23, n.2. As discussed extensively in Liberty Power's previous filings with the Court, the TCPA's speech restriction must be considered "presumptively unconstitutional," *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015), and subject to strict scrutiny, "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). It is irrelevant whether the Government has a "benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech," *Reed*, 135 S. Ct. at 2228 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). A restriction of speech is "content-based" on its face if it "draws distinctions based on the message a speaker conveys." *Reed*, 135 S. Ct. at 2227.

As such, the Government has an exceedingly high burden to meet to preserve the TCPA's speech restrictions. When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions. *Greater New Orleans Broadcasting Assn., Inc. v.*

*United States*, 527 U.S. 173, 183 (1999) ("[T]he Government bears the burden of identifying a substantial interest and justifying the challenged restriction"); *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 879 (1997) ("The breadth of this content-based restriction of speech imposes an especially heavy burden on the Government to explain why a less restrictive provision would not be as effective ..."); *Edenfield v. Fane*, 507 U.S. 761, 770-771 (1993) ("[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree"); *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) ("[T]he State bears the burden of justifying its restrictions ..."). When the Government seeks to restrict speech based on its content, the usual presumption of constitutionality afforded congressional enactments is reversed. "Content-based regulations are presumptively invalid," *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992), and the Government bears the burden to rebut that presumption. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816–17 (2000). The Supreme Court has held that "it is the rare case" where a law would survive strict scrutiny. *Burson v. Freeman,* 504 U.S. 191, 211 (1992); *see also Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 800 (2011) ("[i]t is rare that a regulation restricting speech because of its content will ever be permissible.")(internal quotation marks omitted).

   The Government has utterly failed this burden with respect to the content-based speech restrictions of the TCPA. The Government notes that no court has yet to find the TCPA unconstitutional. Gov't Br. at 1. However, it appears that none of these courts were presented with or considered the Supreme Court's holding in *Playboy Entm't Grp., Inc.* that a statute fails a strict scrutiny analysis when it prohibits speech to all residences where it is feasible to allow only those households who do not wish to receive the speech to opt in to privacy protection. *See*

*Playboy Entm't Grp., Inc.*, 529 U.S. at 816. Moreover, none of these Courts were bound by Third Circuit case law prohibiting severance of statutory provisions in such a way as to restrict more rather than less protected speech. *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072–73 (3d Cir. 1994).[1] Tellingly, the Government's brief fails to address either one of these issues and thus concedes them. As such, the Government leaves the Court with little choice but to find that the TCPA's speech restrictions cannot constitutionally be applied to Liberty Power.

## II. The TCPA is a Content-Based Statute That Must Be Reviewed Under the Strict Scrutiny Test

As discussed extensively in Liberty Power's previous filings, the First Amendment issues raised by the TCPA in this case must be reviewed under the strict scrutiny standard. In contrast, the Government contends that the subject TCPA statute, 47 U.S.C. § 227(b)(1)(A)(iii) is not unconstitutional because it has been upheld by numerous courts under the "intermediate scrutiny" standard Gov't Br. at 6. In support of this position, the Government primarily references a Seventh Circuit case that reviewed the constitutionality of a state law, not the TCPA. *See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 306 (7th Cir. 2017). The Government relies on dicta in this case for the proposition that previous decisions upholding the constitutionality of the TCPA under an intermediate scrutiny analysis were unaffected by *Reed*. Gov't Br. at 6. However, the cases cited in Government's Brief (*i.e., Gomez, Van Bergen*) were all decided <u>before</u> the statutory change to the TCPA that is the primary focus of Defendant's argument. Because the Court in *Patriotic Veterans, Inc.* was examining a state law and not the federal TCPA, it is not clear that Court had examined the statutory language challenged here or

---

[1] In addition, several courts have already certified challenges to the TCPA's constitutionality for interlocutory appellate review, conceding that although they found that the provision survives strict scrutiny, "other courts could have endorsed the opposite result" on this "'highly debatable question[]'" in light of "the high bar that strict scrutiny presents." *Brickman v. Facebook, Inc.*, No. 16-CV-00751- TEH, 2017 WL 1508719, at *3-4 (N.D. Cal. Apr. 27, 2017); *see also* Order, *Holt v. Facebook, Inc.*, No. 16-CV-02266-JST (N.D. Cal. May 2, 2017), D.I.. 86 at 1.

that it was even aware that the statute had been amended. As such, the *Patriotic Veterans, Inc.* case bears little relevance for the instant proceeding.[2]

The Government's other primary argument is that the Court should find the TCPA to be content neutral, because it contains only a "relationship-based exception." Gov't Br. at 11-13. However, the TCPA clearly makes a distinction based on *content* of a call, not the *relationship* of the caller and called party. For example, when a homeowner takes out a private, government-backed mortgage, *anyone* is free to call the borrower, regardless of their relationship, as long as the call is "made solely to collect a debt … guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). In contrast, all creditors' calls to their respective debtors are universally regulated by the TCPA unless the *content* of that call is designed "*solely* to collect a debt … guaranteed by the United States." *Id.* (emphasis added). In other words, the parties' relationship is clearly irrelevant. A reviewing Court need not examine the parties' relationship—only the call's content—to determine whether Section 227(b)(1)(A)(iii) applies. This renders the provision "content based on its face." *Mejia*, 2017 WL 3278926, at *14. Thus, reviewing courts have now repeatedly rejected the assertion that the government-backed debt exception is "relationship based." *See, e.g.*, *Brickman*, 230 F. Supp. 3d at 1045 ("the exception makes no reference whatsoever to the relationship of the parties."); *Greenley*, 2017 WL 4180159, at *12.[3]

---

[2] The Government spends a great deal of space in its brief discussing several cases to little effect. Gov't Br. at 11, 19-20. For example, the Government states that "[t]he *Free Speech* opinion thus does not undermine the strict scrutiny analysis of other district courts in recent opinions sustaining the constitutionality of the TCPA." Gov't Br. at 19. However, the *Free Speech* opinion does undermine both the Plaintiff and the Government's contention that the Reed case did not have any effect on previous case law and their contention that previous case law analyzing the TCPA pre-Reed and pre-government-debt exemption should still be viewed as relevant case law. *See Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 174 (3d Cir. 2016)(noting that Reed "seemingly" departed from previous case law and thus reversing a previous decisions that statutory provisions were content neutral).

[3] The TCPA is plainly content-based on its face because it is riddled with exceptions that draw distinctions based on the message a speaker conveys and that allow the government to pick and choose what speech is desirable and what speech is not—the hallmarks of a content-based restriction of speech. S*ee McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014) (a statute is content-based "if it require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred") (quoting *FCC v. League of Women*

The Government also claims that this exemption is a reflection of "government speech," as it simply acts to protect those who are collecting debts that the government could undoubtedly collect in the same manner itself. Gov't Br. at 12-13. However, this assertion is completely unsupported by the language of the statute. On its face, the exception exempts from liability *private* callers collecting *private,* government-guaranteed debts, including private student loans and mortgages. Those private entities do not enjoy any sovereign immunity or ability to engage in "government speech."[4]

Moreover, like the Plaintiff, the Government's Brief essentially concedes that a strict scrutiny test is applicable. The Government's Brief references six (6) post-*Reed* district court cases that performed a strict scrutiny analysis; this reliance undercuts any argument that an "intermediate scrutiny" test somehow should be applied to reviewing the constitutionality of the TCPA. Gov't Br. at 13. This Court should follow the example of the vast majority of the recent cases cited by the Plaintiff and apply the strict scrutiny test to the TCPA.[5]

---

*Voters of Cal.*, 468 U.S. 364, 383 (1984)); *United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 966 (9th Cir. 2008) ("We . . . reiterate that the examination of the content of a speaker's message is the hallmark of a content-based rule."). In addition to the government-debt exemption, the TCPA also broadly exempts any "call made for emergency purposes." 47 U.S.C. § 227(b)(1)(A), (B). In applying this exception, the FCC has closely scrutinized the content of the messages to determine whether they fit the FCC's interpretation of the phrase "emergency purposes." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG02-278, 2016 WL 4158735, at *7–8 (Aug. 4, 2016) (applying emergency exception to various messages from educational institutions, including notifications about unexcused absences).

[4] Moreover, the prevailing case law does not support the government's contention that strict scrutiny should not be applied to the TCPA's restriction on speech. *See Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1252 (11th Cir. 2005)*(stating that "exemptions that favor certain speech based on the speaker … such as … [an] exemption … for signs 'erected by … a governmental body' are content based" and subject to strict scrutiny); *see also Dimmitt v. Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993). The Government is free to *say whatever it wishes*; but when the Government **restricts** *private messages, while* **exempting** *government-approved messages conveyed in the same medium*, strict scrutiny is required. *Id*(emphasis added).; *Solantic*, 410 F.3d at 1266 ("'such discrimination among different users of the same medium for expression' … is another form of content-based speech regulation."). The Government's view, ensuring "Government-sponsored [messages] are always given preference over other [private messages] which do not meet with the approval of Government officials," would instead represent "the kind of blatant government censorship which the framers of the First Amendment intended to outlaw forever." *Women Strike for Peace v. Morton, 472 F.2d 1273, 1293 (D.C. Cir. 1972)*; *see also Solantic*, 410 F.3d at 1266.

[5] The Government cites only one case post-*Reed* that analyzed the TCPA using an intermediate scrutiny analysis, *Mey v. Venture Data, LLC*, 245 F. Supp.3d 771, 781 (N.D. W. Va. Mar. 29, 2017). Gov't Br. at 11. However, the

5

## III. The TCPA Does Not Survive Review under the Strict Scrutiny Test

The U.S. Supreme Court in *Reed* explained that the strict scrutiny test of content-based statutes operates as follows:

> [strict scrutiny] requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest,'" *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. [721], 131 S.Ct. 2806, 2817, 180 L.Ed.2d 664 (2011) (quoting [*Citizens United v. Fed Election Comm'n*, 558 U.S. 310, 340 (2010), 130 S.Ct. 876).][6]

*First*, the Government asserts that there is "no doubt that the government has a compelling interest in protecting personal and residential privacy" and collecting revenue. Gov't Br. at 14-16. However, contrary to the Government's representations, *none* of the Government's cited appellate authorities actually concluded that "privacy" is a "compelling" state interest. *See, e.g., Carey v. Brown*, 447 U.S. 455, 470 (1980) (the government "may protect individual privacy by enacting … regulations applicable to all speech *irrespective of content*") (emphasis added).[7] And several circuit courts have expressly held that "privacy" is *not* a compelling interest and *cannot* justify content-based speech restrictions. *See Cooper v. Dillon*, 403 F.3d 1208, 1218 (11th Cir. 2005) ("safeguarding the privacy interests of targets, witnesses, and complainants" in police investigations is "not sufficiently compelling to uphold [the content-based speech] restrictions"); *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1314 (11th Cir. 2017) (*en banc*) ("protection of individual privacy" failed to justify content-based restriction of doctors' speech). At most, "privacy" is a "substantial interest[]," *Pine v. City of W. Palm Beach*, 762 F.3d 1262,

---

*Mey* decision "provides no written analysis to support the conclusion that the TCPA's exceptions are content-neutral," and, as noted above, the Seveth's Circuit's *Patriotic Veterans, Inc.* case that *Mey* chiefly relies on in support of the proposition that the TCPA's exceptions are relationship-based is "a decision addressing Indiana's analog to the TCPA, which has different exceptions than the TCPA." *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1148 (D. Minn. 2017) (criticizing the reasoning in the *Mey* decision).

[6] *Reed* 135 S.Ct. at 2232. Moreover, a content-based restriction on speech is "presumed invalid," and the Government bears the burden of showing its constitutionality. *United States v. Stevens*, 533 F.3d 218, 232 (3d Cir. 2008), *aff'd*, 559 U.S. 460 (2010)(internal citation omitted).

[7] *See also Frisby v. Schultz*, 487 U.S. 474, 482 (1988)(noting that challenged law was content neutral and using intermediate scrutiny rather than strict scrutiny).

1269 (11th Cir. 2014), insufficient to withstand strict scrutiny; *Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996) ("[T]he Supreme Court has never held that [privacy] is a compelling interest … and we do not think that it is.").[8]

With respect to the "narrowly tailored" prong of the Supreme Court's strict scrutiny analysis, as noted above, while six district courts have properly applied a strict scrutiny analysis to the TCPA, each of those courts has failed to analyze the direct applicability of the Supreme Court's decision in *United States v. Playboy Entm't Group, Inc.,* 529 U.S. 814-15 (2000) to the "opt-out" rather than "opt-in" approach of the statute. *Playboy Entm't Group, Inc.* is the leading case in one of a long line of cases where courts have repeatedly found that statutes are not "narrowly tailored" when they prohibit speech to all residences where it is feasible to allow only those households who do not wish to receive the speech to opt in to privacy protection.[9]

An illustration of this principle is the national do-not-call registry, an "opt-in" rather than an "opt-out" regime that, similar to the TCPA's purpose, is designed to reduce unwanted telephone solicitation.[10] However, unlike the TCPA, the national do-not-call registry directly advances those goals with the opt-in approach that is not over inclusive. The district court cases cited by the Government which allowed the TCPA to survive a strict scrutiny analysis all made

---

[8] *See also Pienta v. Vill. of Schaumburg, Ill.*, 710 F.2d 1258, 1260 (7th Cir. 1983)("Defendants' stated interests in avoiding abuse of the liberal sick leave policy and protecting the public fisc…do not rise to the level of compelling interests."); *Victory Processing, LLC v. Michael*, No. 17-CV-109-ABJ, 2018 WL 4204349 (D. Wyo. Aug. 6, 2018)(striking state analog of TCPA as unconstitutional based on a finding that residential privacy is not a "compelling interest").

[9] *See, e.g., Playboy Entm't Group, Inc.,* 529 U.S. at 814-15 (noting that blocking certain channels to all cable subscribers is unnecessarily restrictive, as the subscribers who did not wish to receive these channels could opt out of receiving them); *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 147–49 (1943) (invalidating ban on door-to-door solicitation while noting that regulation banning solicitation when homeowner has indicated a desire not to be disturbed is appropriate); *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 278 (2d Cir. 2010), *aff'd,* 564 U.S. 552 (2011); *see also Rowan v. United States Post Office*, 397 U.S. 728 at 737-738 (1970); *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1242–43, 1246 (10th Cir. 2004) (upholding "do not call" list as constitutional restriction on commercial speech in part because consumers actively joining "do not call" registry before commercial telephone calls are barred is less restrictive of speech than requiring consumers to consent to receiving such calls before they could be made).

[10] *See* 15 U.S. Code § 6101; *see also ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018).

the same mistake. They all assumed that an "opt-in" regime for the TCPA, such as the do-not-call registry's "opt-in" regime, would not be as effective as the TCPA's blanket "opt-out" prohibition, because it would place a burden on the consumer to take an affirmative step to block unwanted calls. Gov't Br. at 17. (stating "Yet asking callers to opt out rather than opt in to receiving calls made using an ATDS or pre-recorded voice would undoubtedly be less effective at protecting called parties from unwanted calls than the TCPA."). However, this ignores clear United States Supreme Court precedent which holds that such a burden cannot justify an over inclusive restriction on freedom of speech.

> It is no response that voluntary blocking requires a consumer to take action, or may be inconvenient, or may not go perfectly every time. A court should not assume a plausible, less restrictive alternative would be ineffective; and a court should not presume [consumers], given full information, will fail to act.[11]

In sum, the do-not-call list is a narrowly tailored, constitutional alternative to the TCPA's blanket prohibition, an alternative that directly advances the government's interests—reducing intrusions upon consumer privacy and the risk of fraud or abuse—by restricting a substantial number (and also a substantial percentage) of the calls that cause these problems. The Government has offered absolutely no evidence beyond conclusory statements and rank speculation that the do-not-call list is less effective in meeting its goals than the TCPA's current blanket prohibition. Gov't Br. at 17-19. The government has thus failed to meet its burden under a strict liability analysis of the TCPA and has left the Court with little choice but to find the TCPA's speech restrictions unconstitutional.

The Government's final argument is that the Court should "sever" the government-debt exemption from the TCPA to render it content neutral and thus avoid a strict scrutiny analysis. Gov't Br. at 9-11. However, this would have the effect of restricting more rather than less

---

[11] *Playboy Entm't Grp.*, Inc., 529 U.S. at 823–24.

speech which would fly in the face of clear Third Circuit precedent. The Third Circuit has expressly forbidden such uses of the severability doctrine in the past.[12]

> If we eliminated the [challenged language], the rest of the statute could surely function independently. However, we are unwilling to sever the exception, because our severability inquiry here has a constitutional dimension. Eliminating the offending exception would mean that we would be requiring the State to restrict *more* speech than it currently does. All existing restrictions would apply, plus there would be a restriction on signs advertising local industries and meetings. To our knowledge, no court has ever mandated issuance of an injunction such as that, and we decline to be the first. In *Mosley,* without even commenting on the possibility of eliminating the exception for peaceful labor picketing, the Supreme Court struck down a statute banning picketing near a school rather than striking down the exception. *See Mosley.*
>
> We refuse to strike down the exception in part because of the special status of speech in our constitutional scheme, a scheme which generally favors more speech. A second reason is that if courts were to sever exceptions from content discriminatory statutes, individuals would lose much of their incentives to challenge such statutes, because those whose speech is banned would often not benefit from the remedy…

*Rappa*, 18 F.3d at 1072–73. Striking the government-debt exception would affect the free speech rights of many third parties who are currently using the public phone system to collect government-backed debt. Gov't Br. at 14. These entities have no doubt relied upon the current statutory language and could have their business models disrupted by a proceeding in which they are not even a party. This is precisely the reason that the Third Circuit has forbidden the use of the severability doctrine to further encumber speech. Thus, neither the Plaintiff nor the Government can use the severability doctrine to save the TCPA's clearly unconstitutional content-based restrictions on free speech.

## IV.   Defendant has Standing to Assert a Constitutional Challenge to the TCPA

The Government also argues that Liberty Power "lacks standing" to challenge Section 227(b)(1)(A)(iii), because the exemption for calls promoting the collection of government-

---

[12] *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072–73 (3d Cir. 1994).

backed debts is "severable." Gov't Br. at 9-11. However, this attempt to shoehorn severability into a standing inquiry "confuses [jurisdiction] with the merits," *Chafin v. Chafin*, 568 U.S. 165, 175 (2013), as severability is not a threshold obstacle to standing, but a question of remedy, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 n.21 (2017); see *also Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 211 (5th Cir. 2011)("We reemphasize, however, that a severability analysis should almost always be deferred until after the determination that the portion of a statute that a litigant has standing to challenge is unconstitutional.").[13] By definition, a defendant "almost always" faces an impending injury (a judgment) that is redressable by defeating the "plaintiff's claim for relief." *See, e.g.*, *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1265 (11th Cir. 2015). Accordingly, the Supreme Court has expressly rejected the argument that the potential for severance of an unconstitutional provision divests the challenger of standing. *Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 7-8 (1989) (rejecting this argument because it would impermissibly "insulate underinclusive statutes from constitutional challenge"); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227 (1987); *Orr v. Orr*, 440 U.S. 268, 272 (1979). As such, the only courts to actually decide this standing question in the TCPA context have soundly rejected the Government's argument.[14]

---

[13] The main case cited by the Government was an unusual situation in that it addressed the severability of the statute first because a finding of nonseverability would have vitiated the challenger's standing. *See INS v. Chadha*, 462 U.S. 919, 931-32, n. 7 (1983). It also specifically notes that the Supreme Court had dealt with severability issues differently in the past. *Id*.

[14] *Silwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2018 WL 1531913, at *3-5 (M.D. Fla. Mar. 29, 2018), *mot. to certify appeal denied*, 2018 WL 2296779 (M.D. Fla. May 21, 2018); *Mejia v. Time Warner Cable Inc*., No. 1:15-CV-06445-JPO, 2017 WL 3278926, at *13 (S.D.N.Y. Aug. 1, 2017); *Am. Ass'n of Political Consultants, Inc. v. Sessions*, No. 5:16-CV-252-D, 2017 WL 1025808, at *2 (E.D.N.C. Mar. 15, 2017).

Respectfully submitted,

**LIBERTY POWER CORP., L.L.C.**

By: /s/ Peter Murphy
Peter Murphy (DE Id. # 5043)
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801
Telephone: 302-552-2906
Facsimile: 302-574-7401
Email: pmurphy@eckertseamans.com
*Co-Counsel for Defendant Liberty Power Corp., L.L.C.*

Charles A. Zdebski (of counsel)
Jeffrey P. Brundage (of counsel)
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
1717 Pennsylvania Avenue, N.W.
12th Floor
Washington, D.C. 20006
Telephone: 202-659-6676
Facsimile: 202-659-6699
Email: czdebski@eckertseamans.com
Email: jbrundage@eckertseamans.com
*Co-Counsel for Defendant Liberty Power Corp., L.L.C.*