IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDREW R. PERRONG, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 18-712 (MN) ) |
| LIBERTY POWER CORP., L.L.C., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

Chad J. Toms, Whiteford Taylor Preston LLC, Wilmington, Delaware. Of Counsel: Aytan Y. Bellin, Bellin & Associates LLC, White Plains, New York. Counsel for Plaintiff.

Alexandra Rogin, Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware. Of Counsel: Charles A. Zdebski, Jeffrey P. Brundage, Eckert Seamans Cherin & Mellott, LLC, Washington, D.C. Counsel for Defendant.

David C. Weiss, Chad A. Readler, Eric R. Womack, Anjali Motgi, Laura D. Hatcher, United States Department of Justice, Washington, DC. Counsel for the United States of America.

September 30, 2019
Wilmington, Delaware

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. DISTRICT JUDGE**

Plaintiff Andrew R. Perrong ("Plaintiff" or "Perrong") filed this lawsuit against Defendant Liberty Power Corp. L.L.C. ("Defendant" or "Liberty Power"), asserting "violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations promulgated thereunder (the 'TCPA')." (D.I. 1 ¶ 1). In his Complaint, Plaintiff alleges that Liberty Power violated the TCPA by using an automatic telephone dialing system or an artificial or prerecorded voice to call him without his prior consent. (*Id.* ¶ 2).

Currently pending before the Court is Liberty Power's "Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Upon Which Relief Can Be Granted and Partial Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction." (D.I. 8). Plaintiff opposes the motion. (D.I. 12). Additionally, because Liberty Power's defenses raise a constitutional question – specifically whether the TCPA violates the First Amendment – pursuant to Rule 5.1(c) of the Federal Rules of Civil Procedure, the United States has intervened and filed a brief in support of the TCPA. (D.I. 23). In response to a request from the Court, the parties also submitted supplemental authorities regarding the constitutionality of the TCPA. (D.I. 43, 44, 45 & 47). On May 10, 2019, the Court heard oral argument. For the following reasons, Liberty Power's motion to dismiss is DENIED.

**I.      BACKGROUND**

**A.      The TCPA**

Originally enacted by Congress in 1991, the TCPA was a response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012); *see also Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 161 (4th Cir. 2019). Relevant here, the TCPA prohibits "any call (other

than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number . . . for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). As is apparent from the statutory language quoted, the prohibition is subject to three exemptions: (1) calls made for "emergency purposes," (2) calls made with the "prior express consent of the called party," and (3) calls "made solely to collect a debt owed to or guaranteed by the United States" (hereinafter, "the debt-collection exemption").[1] *Id*. Congress added the debt-collection exemption in November 2015 as part of the Bipartisan Budget Act of 2015. (D.I. 23 at 3). It is the debt-collection exemption that forms the basis of Defendant's constitutional challenge.

### B. Factual Background of the Litigation

The Complaint alleges that on March 13, 2018, Liberty Power "using an automatic telephone dialing system, caused to be made at least one (1) call to Plaintiff on his Voice Over Internet Protocol ('VOIP') telephone using a prerecorded or artificial voice, without Plaintiff's prior express permission, to encourage him to purchase energy services from Defendant." (D.I. 1 ¶ 1; *see also Id*. ¶ 16). The voice "said that Defendant could provide Plaintiff with a discount on Plaintiff's energy bill and directed Plaintiff to press 1 to speak to an account representative. After Plaintiff pressed 1, a person with whom Plaintiff spoke over the telephone identified the caller as Liberty Power, i.e., Defendant." (D.I. 1 ¶ 16). "Plaintiff was charged for this call." (*Id.* ¶ 2).

---

[1] In addition to the three statutory exemptions, "[t]he United States and its agencies . . . are not subject to the TCPA's prohibitions" and thus automated calls made by the federal government itself are not barred. *See Am. Ass'n of Political Consultants*, 923 F.3d at 162 (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016)).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

### B. Rule 12(b)(1)

"Standing is a jurisdictional matter and thus 'a motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1).'" *Susinno v. Work Out World, Inc.*, No. 15-5881 (PGS), 2017 WL 5798643, at *1 (D.N.J. Nov. 28, 2017). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A facial challenge contests the sufficiency of the pleadings, whereas a factual challenge contests the sufficiency of jurisdictional facts. *Id.* In reviewing a facial

challenge, the Court considers only the allegations in the complaint and any documents referenced in or attached to the complaint, in the light most favorable to the plaintiff. *See Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). In contrast, when reviewing a factual challenge, the Court may weigh and consider evidence outside the pleadings. *See Davis v. Wells* Fargo, 824 F. 3d 333, 346 (3d Cir. 2016); *see also Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In a factual challenge, "no presumptive truthfulness attaches to plaintiffs' allegations." *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### III. <u>DISCUSSION</u>

Liberty Power seeks dismissal of Perrong's claims, arguing that the TCPA is unconstitutional because it violates the First Amendment.[2] (D.I. 8-1 at 3-11). Liberty Power further argues that the Court does not have subject matter jurisdiction to issue an injunction because Perrong lacks standing to pursue his claims. (*Id*. at 12-17). Before resolving these issues, the Court will first address the Government's argument that Liberty Power does not have standing to assert a constitutional challenge to the TCPA. (*See* D.I. 23 at 9-11).

#### A. Defendant's Standing

As a threshold issue, the Court finds that Liberty Power has standing to challenge the constitutionality of the TCPA. For a party to have standing, it must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

---

[2] In a few conclusory sentences of its Opening Brief, Liberty Power asserts that the TCPA is unconstitutional based on the Equal Protection clause. (D.I. 8-1 at 3). Liberty Power did not raise the argument in its Reply Brief or during oral argument. (*See* D.I. 28). Accordingly, the Court understands that Liberty Power is not pursuing the issue and the Court will not address it.

3

(2016); *see also Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). Although not typical, "the requirement that a party establish its standing to litigate applies not only to plaintiffs but also defendants." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1265 (11th Cir. 2015); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("Standing to sue or defend is an aspect of the case-or-controversy requirement.").

The Government argues that finding the TCPA unconstitutional based on the debt-collection exemption does not redress Liberty Power's injuries because the exemption can be severed, which still leaves the possibility of liability under the remaining portion. (D.I. 23 at 10). Severability, however, "is a question of remedy, to be addressed once a constitutional violation has been identified. It is not a threshold issue implicating a party's standing to challenge constitutionality in the first instance." *Mejia v. Time Warner Cable Inc.*, *et al.*, No. 15-6445 (JPO), 2017 WL 3278926, at *13 (S.D.N.Y. Aug. 1, 2017). Indeed, as the *Mejia* court explained, "[t]o treat severability as an issue of justiciability would risk insulating underinclusive statutes from constitutional challenge, as it would foreclose challenges by parties liable under a rule made unconstitutional by a potentially severable exception."[3] *Id.* Here, a finding that the TCPA is unconstitutional would release Liberty Power from liability and, as a result, redress its injuries. *See Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 925 (C.D. Cal. 2018); *Mejia*, 2017 WL 3278926, at *14; *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1043 (N.D. Cal. 2017); *see also Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1152-53 (9th Cir. 2019) (finding that

---

3   A law is underinclusive when it abridges "*too little* speech," *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1668 (2015) (emphasis in original), thereby allowing "appreciable damage" to the government's asserted compelling interest. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2232 (2015). Here, Liberty Power argues that the challenged debt-collection exemption is both underinclusive and overinclusive. (Hr'g Tr. at 11:7-19).

4

defendant had standing). Thus, the Court finds that Liberty Power has standing to challenge the constitutionality of the TCPA.

## B. Constitutionality of the TCPA

"In order to properly assess and dispose of the [Defendant's] Free Speech Clause challenge to the debt-collection exemption, [the Court] must address three issues." *Am. Ass'n of Political Consultants*, 923 F.3d at 165. First, it "must decide whether, on one hand, the debt-collection exemption is a content-based speech restriction subject to strict scrutiny review, or whether, on the other hand, it constitutes a content-neutral speech restriction subject to intermediate scrutiny analysis." *Id.* (citing *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015)). Then, the Court "must evaluate whether the debt-collection exemption to the automated call ban survives the applicable level of scrutiny." *Am. Ass'n of Political Consultants*, 923 F.3d at 165. And finally, if the debt-collection exemption "impermissibly infringes on free speech rights," the Court "must identify the appropriate remedy for that infringement" – *i.e.*, it must "decide whether to strike the automated call ban in its entirety, or whether to simply sever the flawed exemption therefrom." *Id.* (citing *Regan v. Time, Inc.*, 468 U.S. 641, 652-53 (1984)).

### 1. Content-Based vs. Content-Neutral

The First Amendment prohibits Congress from enacting laws "abridging the freedom of speech." U.S. CONST. amend. I. That said, "not all laws that affect speech are unconstitutional." *Woods v. Santander Consumer USA Inc.*, No. 2:14-2104-MHH, 2017 WL 1178003, at *1 (N.D. Ala. Mar. 30, 2017). In evaluating a First Amendment challenge based on speech, courts distinguish between content-based and content-neutral regulation of speech. "Content-based regulations 'target speech based on its communicative content.'" *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (quoting *Reed*, 135 S. Ct. at 2226). "[S]uch

5

laws 'are presumptively unconstitutional'" and subject to strict scrutiny. *Becerra*, 138 S. Ct. at 2371. That is, content-based regulations "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. In contrast, a law is content-neutral if it "serves purposes unrelated to the content of expression . . . even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). A content-neutral law is subject to intermediate scrutiny, meaning it must be "narrowly tailored to serve a significant governmental interest." *Packingham v. N. Carolina*, 137 S. Ct. 1730, 1736 (2017) (quoting *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014)).

Liberty Power argues that the TCPA is content-based due to the debt-collection exemption. (D.I. 8-1 at 6-7). The Court agrees. The TCPA, on its face, distinguishes between phone calls based on their content. Automated calls – which are otherwise generally prohibited under the TCPA – are permitted if the call is "solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). But automated calls dealing with other subjects, such as non-government owed or guaranteed debt, are not permitted. Indeed, a private collection agency charged with collecting one debt owed to private sources and another owed to the government may communicate using automated calls only with respect to the subject of the latter. Thus, the debt-collection exemption targets calls "based on [their] communicative content," *i.e.*, whether or not the subject discussed is debt owed to or guaranteed by the government. *Reed*, 135 S. Ct. at 2226; *see also Am. Ass'n of Political Consultants*, 923 F.3d at 166. The debt-collection exemption is, in other words, a content-based regulation of speech. Notably, every court but one[4] to address the

---

[4] In *Mey v. Venture Data, LLC*, the court found that the debt-collection exemption was content-neutral based on a pre-existing relationship. 245 F. Supp. 3d 771, 792 (N.D. W.Va.

issue after *Reed* has reached this same conclusion for the same reason. *See, e.g.*, *Duguid*, 926 F.3d at 1153; *Gallion*, 287 F. Supp. 3d at 927; *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1149 (D. Minn. 2017); *Mejia*, 2017 WL 3278926, at *14; *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1032 (N.D. Cal. 2017); *Brickman*, 230 F. Supp. 3d at 1045.

The Government argues that the debt-collection exemption is content-neutral for two reasons. First, the Government argues that the statute is based on "the relation between the caller (*i.e.*, the owner or servicer of the debt) and the recipient (*i.e.*, the person responsible for paying that debt)" and not the content of the call. (D.I. 23 at 11). Second, the Government argues that the debt-collection exemption is not content-based because it only regulates government speech. (*Id.* at 12-13).

As to the Government's first argument, a relationship is created when a debtor owes a debt that is guaranteed by the federal government, but the debt-collection exemption does not regulate on the basis of that relationship. *Am. Assoc. of Political Consultants*, 923 F.3d at 166-67. Indeed, the debt-collection exemption makes no reference "on its face" to the relationship between the caller and the recipient of the automated phone call. *Id.*; *see also Brickman*, 230 F. Supp. 3d at 1045 ("The plain language of the exception makes no reference whatsoever to the relationship of the parties."). Instead, "the exemption regulates on the basis of the content of the phone call." *Am. Assoc. of Political Consultants*, 923 F.3d at 167; *see also Greenley*, 271 F. Supp. 3d at 1148. Compare, for example, the analogous state statutes that have been deemed content-neutral based on a relationship – those statutes explicitly reference a relationship between the caller and the receiver of the call. *See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 304 (7th Cir. 2017)

---

Mar. 29, 2017). *Mey*, however, devoted only one sentence to the issue and relied on Indiana's analog to the TCPA, which has different exemptions than the TCPA.

7

(finding Indiana's version of the TCPA content-neutral where it exempts, *inter alia*, "[m]essages to subscribers with whom the caller has a current business or personal relationship")[5]; *Van Bergen v. Minn.*, 59 F.3d 1541, 1550 (8th Cir. 1995) (finding the same for Minnesota's version of the TCPA). Therefore, the Court finds that the TCPA does not qualify as content-neutral based on a pre-existing relationship.

As to the Government's second argument, the Government has not shown that a court determines whether a law is content-neutral by looking at whether it regulates government speech. The two cases on which the Government relies are simply inapposite. In *Campbell-Ewald Co. v. Gomez*, the Supreme Court considered whether federal contractors are liable for violating the TCPA and noted that the federal government itself cannot be found liable "because no statute lifts their immunity." 136 S. Ct. 663, 672 (2016). There was no discussion of whether the statute was content-neutral or content-based. Similarly, *Brickman* is unavailing because the court concluded that the TCPA was, in fact, content-based, the opposite result the Government seeks. *Brickman*, 230 F. Supp. 3d at 1047. In addition, *Brickman*'s only discussion of government immunity related to whether the TCPA was narrowly tailored. *Id*. The court there did not look to the existence of government immunity to determine whether or not the TCPA is content-neutral. Thus, the Government has provided no authority to show that regulation of its own speech renders a statute content-neutral.

---

[5] Indiana's TCPA analog exempted "(1) Messages from school districts to students, parents, or employees[;] (2) Messages to subscribers with whom the caller has a current business or personal relationship[; and] (3) Messages advising employees of work schedules." *Patriotic Veterans*, 845 F.3d at 304. The first and second exceptions are based on the relationship between caller and recipient. The plaintiff did not invoke the third exception. *See id.* at 305.

Additionally, the Government's assertion is unsupported by the plain language of the statute. The statute exempts from liability calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). The statute allows "third-party debt collectors to place calls on the government's behalf." *Duguid*, 926 F.3d at 1153; *Greenley*, 271 F. Supp. 3d at 1149. While the Government itself may be immune from liability, those private entities are not.

### 2. Application of Strict Scrutiny

Because the debt-collection exemption is content-based, this provision must survive strict scrutiny to remain standing. *See Reed*, 135 S. Ct at 2231. Laws subject to strict scrutiny are presumptively unconstitutional and can only be justified if they (1) serve a compelling state interest and (2) are narrowly tailored to achieve that interest. *Id.* at 2226. The TCPA was enacted "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home." S. REP. NO. 102-178, at 1 (1991).

The Government asserts that "consumers' personal and residential privacy – which is injured through unwanted calls to both landlines and mobile telephone lines – is the well-recognized and compelling state interest served by the TCPA."[6] (D.I. 23 at 14) (citing *Carey v. Brown*, 447 U.S. 455, 471 (1980); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) and *Patriotic Veterans*, 845 F.3d at 305). The Court agrees. The Supreme Court has noted Congress's findings in connection with enacting the TCPA that "automated or prerecorded telephone calls made to

---

[6] The Government asserts that the debt-collection exemption also "serves the government's compelling interest in protecting the public fisc" because it enables collection of funds owed to or guaranteed by the United States. (D.I. 23 at 16, n.6; Hr'g Tr. at 36:24-37:20). Even accepting the Government's argument as true, the debt-collection exemption is not the least restrictive means to achieve it. As other courts have found, the government, for example, could obtain consent from its debtors or place the calls itself. *See, e.g.*, *Am. Ass'n of Political Consultants*, 923 F.3d at 169 n.10; *Duguid*, 926 F.3d at 1156.

9

private residences . . . were rightly regarded by recipients as an invasion of privacy." *Mims*, 565 U.S. at 372 (quotation and alteration omitted) (citing Congressional Findings for the TCPA). The Supreme Court also has held that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Carey*, 447 U.S. at 471. Indeed, "[o]ne important aspect of residential privacy is protection of the unwilling listener . . . . [I]ndividuals are not required to welcome unwanted speech into their own homes and . . . the government may protect this freedom." *Frisby*, 487 U.S. at 484-85. The protections afforded for residential privacy extend to the cell phone. *See, e.g.*, *Victory Processing, LLC v. Fox*, No. 18-35163, 2019 WL 4264718, at *6 (9th Cir. Sept. 10, 2019) (holding that state's compelling interest in protecting privacy "justifies applying the TCPA to cellular devices"); *Patriotic Veterans*, 845 F.3d at 305 ("No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls."); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014) (finding "no evidence that the government's interest in privacy ends at home" and noting, in any event, that for "many households a cell phone is the home phone" (emphasis in original)). Thus, the Court concludes that protecting the "well-being, tranquility, and privacy" of the individual's residential privacy is a compelling state interest.[7]

That there is a compelling state interest does not end the inquiry – rather, the Court must determine whether the law is narrowly tailored to achieve that state interest. Content-based laws run afoul of the narrow tailoring requirement if they are overinclusive or underinclusive.

---

[7] The Government does not distinguish between the compelling interest served by the TCPA as a whole and that served by the debt-collection exemption. Arguably, this approach is "at odds with *Reed*, which directs that the tailoring inquiry focus on the content-based differentiation – here, the debt-collection exception." *See Duguid*, 926 F.3d at 1155 (citing *Reed*, 135 S. Ct. at 2231-32).

10

*See Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 193 (3d Cir. 2008) (affirming a district court's conclusion that "COPA is not narrowly tailored because it is both overinclusive and underinclusive"); *see also Defense Distributed v. United States Dept. of State*, 838 F.3d 451, 470 (5th Cir. 2016) ("A regulation is not narrowly tailored if it is 'significantly overinclusive.'") (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 121 (1991)); *Joelner v. Village of Wash. Park, Ill.*, 508 F.3d 427, 433 (7th Cir. 2007) ("[A]n underinclusive regulatory scheme is not narrowly tailored.").

A law is overinclusive when "a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002). A law is underinclusive when it abridges "*too little* speech," *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1668 (2015) (emphasis in original), thereby allowing "appreciable damage" to the government's compelling interest,[8] *Reed*, 135 S. Ct. at 2232. Here, the TCPA is fatally underinclusive. As noted previously, the evidence compiled by Congress indicates that consumers "consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." *Duguid*, 926 F.3d at 1155 (quoting Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(10), 105 Stat. 2394, 2394). There is no serious doubt that the debt-collection exemption would allow a substantial number of those intrusive calls.[9] As the Fourth Circuit recognized, "[t]he debt-collection exemption . . . undercuts [the asserted] privacy protections" by "authorizing many of the intrusive calls that the automated call

---

[8] As the Supreme Court has recognized, "underinclusiveness can raise 'doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" *Williams-Yulee*, 135 S. Ct. at 1668 (quoting *Brown v. Entm't Merch. Assoc.*, 564 U.S. 786, 802 (2011)).

[9] The Government does not dispute that substantial debt is backed by the Government. For example, approximately 80 percent of student loan debt, consisting of more than 41 million borrowers, is backed by the government. (Hr'g Tr. 57:2-58:11).

ban was enacted to prohibit." *Am. Ass'n of Political Consultants*, 923 F.3d at 168. "In fact, the exemption applies in a manner that runs counter to the privacy interests that Congress sought to safeguard." *Id.* This Court agrees. Accordingly, the TCPA is not narrowly tailored to serve the asserted compelling interest. *Id.*; *see also Duguid*, 926 F.3d at 1155.[10]

### 3. Severability

Perrong asks the Court to remedy any constitutional defect by severing the unconstitutional provision regarding the debt-collection exemption and allowing the remaining portion of the TCPA to stand.[11] (D.I. 12 at 15-16). An unconstitutional provision may be severed if: (1) severance is consistent with Congressional intent and (2) "what is left is fully operative as law." *Regan*, 468 U.S. at 653. Indeed, "the invalid portions of a statute are to be severed 'unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'" *INS v. Chadha*, 462 U.S. 919, 931-32 (1983) (citation omitted).

The inclusion of a severability provision in a statute creates a presumption that Congress favored severance over finding the entire statute unconstitutional. *See Alaska Airlines, Inc. v. Brock*, 80 U.S. 678, 686 (1987). Here, chapter 5 of the Communications Act of 1934, which encompasses the TCPA, includes a severability provision stating that, "[i]f any provision of this

---

[10] Having found that the debt-collection exemption is fatally underinclusive, the Court does not address the argument that it is also overinclusive.

[11] Liberty Power argues briefly in footnotes that the Court must also sever the emergency exemption found in Section 227(b)(1)(A), because that exemption is also content-based. (*See* D.I. 15 at 6 n.19; *see also* D.I. 28 at 4 n.4 (noting that the emergency exemption is content-based)). The Court, however, need not address arguments raised entirely in footnotes. *See e.g.*, *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 497 (D. Del. 2019).

12

chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." 47 U.S.C. § 608. Accordingly, there is a presumption that severance is consistent with Congressional intent.

Moreover, "there is no evidence that Congress would not have enacted the TCPA without the exception for government debt." *Woods*, 2017 WL 1178003, at *3 n.6. To the contrary, the TCPA was enacted in 1991 without the debt-collection exemption, and that version of the TCPA (without the exemption) has been upheld "as a valid content-neutral restriction on speech" by "several courts" throughout the country. *Woods*, 2017 WL 1178003, at *4; *see, e.g., Gomez*, 768 F.3d at 876; *Moser v. Fed. Commc'ns Comm'n,* 46 F.3d 970, 975 (9th Cir. 1995)*; Strickler v. Bijora, Inc*., No. 11 CV 3468, 2012 WL 5386089, at *5 (N.D. Ill. Oct. 30, 2012); *Wreyford v. Citizens for Transp. Mobility, Inc*., 957 F. Supp. 2d 1378, 1380-82 (N.D. Ga. 2013). Thus, consistent with other courts addressing this issue, this Court concludes that the debt-collection exemption is severable from the remainder of the TCPA. *See Duguid*, 926 F.3d at 1156; *Am. Ass'n of Political Consultants*, 923 F.3d at 171; *Wijesinha v. Bluegreen Vacations Unlimited, Inc*., No. 19-20073, 2019 WL 3409487, at *5 (S.D. Fla. Apr. 3, 2019); *Sliwa v. Bright House Networks, LLC*, No. 2:16-235-FtM-29MRM, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018).

Liberty Power argues that the Third Circuit's decision in *Rappa v. New Castle County*, 18 F.3d 1043, 1068 (3d Cir. 1994), precludes severance because it would "have the effect of restricting more rather than less speech." (D.I. 15 at 6). The Court, however, does not read *Rappa* so broadly as to preclude severance any time a statute is underinclusive. *Rappa* held that "the proper remedy for content discrimination generally cannot be to sever the statute so that it restricts more speech than it did before – at least absent quite specific evidence of a legislative preference

for elimination of the exception." 18 F.3d at 1073. Here, there is specific evidence of a legislative preference for severance. *See Wijesinha*, 2019 WL 3409487, at *5; *see also Sliwa*, 2018 WL 2296779, at *3. The TCPA contains a severance provision (47 U.S.C. § 608) that is specific to the TCPA, unlike the "general severance provision" at issue in *Rappa*.[12] *See Rappa*, 18 F.3d at 1072-73. Moreover, Congress enacted the TCPA without the debt-collection exemption. Liberty Power does not argue the pre-2015 version of the TCPA is unconstitutional; indeed, as noted above, "the version of the TCPA without the [debt-collection] exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country." *Woods*, 2017 WL 1178003, at *3, n.6. The Court is not persuaded that removing this amendment would somehow render unconstitutional a statute that had been repeatedly upheld as constitutional in its previous form. Thus, although the Court finds that the TCPA is unconstitutional due to the debt-collection exemption, it also finds that the exemption can be severed. Accordingly, Perrong is not deprived

---

[12] Liberty Power argues that the "specific evidence" required by *Rappa* must be on the same level as found in *Heckler*, which the *Rappa* court discussed approvingly. (Hr'g Tr. at 27-30); *see also Rappa*, 18 F.3d at 1073 n.53. In *Heckler*, the plaintiff argued that a statute setting a five-year grace period under which men would receive less Social Security benefits than similarly situated women violated the Equal Protection clause. *Heckler v. Mathews*, 465 U.S. 728, 730-31 (1984). Congress enacted the grace-period statute after the same law without a grace period was struck down as unconstitutional. *Id.* (citing *Califano v. Goldfarb*, 430 U.S. 199 (1977)). The purpose of the grace-period was to "protect the expectations of persons, both men and women, who had planned their retirements based on pre-January 1977 law." *Heckler*, 465 U.S. at 745. The Supreme Court ultimately upheld the grace-period but noted in dicta that, if the statute had been found unconstitutional, then per the express intent of Congress as set forth in a severance provision, the different groups would be made equal by reducing the benefits for women, not increasing the benefits for men. *Id.* at 730 n.5. The severance provision in *Heckler* addressed the specific constitutional challenge raised – and Congress's preferred remedy – because Congress knew when it was enacting the grace-period statute that the previous version was struck down for unequal treatment of men and women. Requiring the same level of specificity here is unrealistic because the TCPA was not enacted after facing a constitutional challenge that struck down a previous version of the law. To the contrary, prior to the 2015 amendment adding the debt-collection exemption, the TCPA had been upheld in the face of First Amendment challenges.

of grounds to state a claim under the TCPA. Liberty Power's motion to dismiss pursuant to Rule 12(b)(6) will be denied.

## C. Subject Matter Jurisdiction Regarding an Injunction

There is no question that the Court has subject matter jurisdiction in this case over Perrong's claims for money damages. (Hr'g Tr. at 76:6-12). At issue is Liberty Power's argument that the Court lacks subject matter jurisdiction over Perrong's claims for an injunction because he does not have standing to seek that relief.[13]

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 185 (2000). "To establish standing in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer *future* injury from the defendant's illegal conduct." *Doe v. Nat'l Bd. of Med. Exam'rs*, 210 F. App'x 157, 159-60 (3d Cir. 2006) (emphasis in original). According to Liberty Power, Perrong does not have standing to seek a permanent injunction because he has failed to plead any possibility of future harm. (D.I. 8-1 at 14-15). Specifically, Liberty Power asserts that Perrong "received one misdialed telephone call and there is no likelihood of him being called again" because he is on the company's internal do-not-call list. (*Id*. at 17).

As an initial matter, Perrong argues that the "future injury" requirement does not apply when an injunction is authorized by statute. (D.I. 12 at 17; *see also* Hr'g Tr. at 87:1-9). In *United States v. Stover*, the main case Perrong cites for this proposition, the Eighth Circuit stated:

> When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated

---

[13] Liberty Power appeared to argue in its Opening Brief that the Court also lacked subject matter jurisdiction because the controversy is moot (D.I. 8-1 at 15-17) but then stated in its Reply Brief that it "is not seeking to 'have the litigation deemed moot'" (D.I. 15 at 8). Because Liberty Power has disclaimed any mootness argument, the Court will not decide the issue.

15

> and the injunction would fulfill the legislative purpose. The traditional criteria
> for permanent injunctive relief need not be discussed.

650 F.3d 1099, 1106 (8th Cir. 2011). *Stover*, however, is distinguishable. The statute in *Stover* set forth specific criteria for granting injunctive relief. *See* 26 U.S.C. § 7408(b) (stating that an injunction may issue "if the court finds (1) that the person has engaged in any specified conduct, and (2) that injunctive relief is appropriate to prevent recurrence of such conduct"). The statute at issue here, however, contains no such prerequisites that preempt the traditional criteria analyzed in claims for injunctive relief. Instead, Section 227 of the TCPA simply states that a person may bring an action under this subsection "to enjoin such violation." 47 U.S.C. § 227(b)(3). Because Section 227 proposes no prerequisites for injunctive relief, *Stover* does not apply and Perrong must establish standing for his claim for an injunction by showing that he is likely to suffer future injury.

Liberty Power argues that Perrong cannot show future injury because: (1) he did not receive a call from an automatic telephone dialing system and (2) he has been added to the company's internal do-not-call list. (D.I. 8-1 at 17). This argument relies on facts not in the Complaint and not yet subjected to discovery by the parties. Liberty Power states that it is making a factual challenge to subject matter jurisdiction (Hr'g Tr. at 79:17-20), which allows the Court to weigh and consider evidence outside the pleadings, *see Gould Elecs.*, 220 F.3d at 176. Although that may be true in some circumstances, the Third Circuit has cautioned "against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits," which should instead be brought under Rule 12(b)(6). *Davis*, 824 F.3d at 348-49. Indeed, "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly," such as in circumstances "where such a claim is wholly insubstantial and frivolous" and does not overlap with the merits issue. *Id.* at 350. Here, Liberty Power raises facts that go to the core of the merits of the underlying claim for an injunction. In such cases, "the proper procedure for the district court

is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case. *Id.* at 348 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 898 n.5 (3d Cir. 1987)).

Further discovery may reveal that Liberty Power has, in fact, taken steps to ensure that future violations will not occur, rendering injunctive relief unnecessary or inappropriate, but the Court cannot grant a motion to dismiss concluding that at this juncture. Accordingly, Liberty Power's motion to dismiss the request for injunctive relief pursuant to Rule 12(b)(1) will be denied.

## IV. CONCLUSION

For the foregoing reasons, Liberty Power's motion to dismiss (D.I. 8) is DENIED. An appropriate order will be entered.